**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ernesto TERCERO, Defendant-Appellant.**

**No. 78–1995.**

United States Court of Appeals, Ninth Circuit.

Jan. 18, 1980.

As Amended on Denial of Rehearing and Rehearing En Banc Aug. 4, 1980.

John P. Frank, Lewis & Roca, Phoenix, Ariz., argued for defendant-appellant; Anthony R. Lucia, Lewis & Roca, Phoenix, Ariz., on the brief.

Edmund G. Noyes, Jr., Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before GOODWIN and WALLACE, Circuit Judges, and HAUK,* District Judge.

* Honorable A. Andrew Hauk, United States District Judge, Central District of California, sitting by designation.

WALLACE, Circuit Judge:

Tercero appeals his conviction for possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He contends that reversal is required due to the loss or destruction of certain photographs taken the night of his arrest, the denial of his right to a speedy trial, and the trial court's refusal to rule in advance on the admissibility, for impeachment purposes, of his prior conviction for the sale of heroin. We have held this case pending the *en banc* disposition of *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979), and now affirm the conviction.

In November 1974, a federal undercover agent, Florence, arranged for the purchase of a large quantity of marijuana and agreed to take delivery of his purchase at a house in Phoenix, Arizona. He was taken to the house in the early morning hours of November 4, and was introduced at the door to a Mexican-American whom he later identified as Tercero. There were several other Mexican-Americans on the premises. The man who met him at the door led him through the house to the garage where he showed Florence several hundred pounds of marijuana. As Florence thereafter began to drive his automobile into the garage purportedly to load the marijuana, someone, apparently realizing that he was a federal agent, attempted to prevent his entry by closing the garage door. Florence then identified himself as a federal agent, summoned back-up officers, and Tercero and two others were arrested. Other persons in the house fled and escaped arrest.

Tercero was first tried in July 1976, but that trial resulted in a hung jury. At that trial, Tercero testified that he was not involved in the sale or distribution of the marijuana stored at the house. He denied that he was the man who met Florence at the door, and he testified that he first saw Florence when Florence entered the living

room where Tercero was sitting with his brother. He testified that he had not previously visited the house, which was rented by his brother, and had been there just a few minutes when Florence entered. Tercero's theory at the first trial was that Florence mistook him for "Eddie," who escaped while Florence was trying to apprehend the group. He also testified that he was leaving his brother's house when Florence arrested him. Defense witness Vasquez and Tercero's brother Tony corroborated Tercero's version of the facts at the first trial. The only contested factual issue at that trial and in the subsequent trial that resulted in his conviction, is whether Tercero was the man who opened the door for Florence and ultimately showed him the marijuana.

## I.

■ On the night that Tercero was arrested, he was photographed by the Maricopa County Sheriff's Department, the United States Marshal, and the Drug Enforcement Administration (DEA). At the second trial, the government, without objection from Tercero's counsel, offered the Marshal's arrest photograph of Tercero wearing a white T-shirt. The photograph was introduced to corroborate Florence's testimony that Tercero was wearing a white T-shirt on the night of the arrest. At the close of Florence's testimony, Tercero requested copies of the photographs taken by the Sheriff's Department and the DEA. He claimed that these photographs would show him wearing heavier clothing on the night of the arrest. The government stated that the other photographs were missing. While no explanation was offered for the missing DEA photograph, the government did state that the County had destroyed its photograph as a matter of routine file-cleaning. Tercero then moved to dismiss the indictment on the ground that the government had lost or destroyed material evidence. He urges that the district court erred by denying his motion.

1. Five judges joined Judge Kennedy's separate concurring opinion in *Loud Hawk* (six of the eleven judges sitting).

When evidence is lost or destroyed while in the government's possession, "[t]he Government bears the burden of justifying its conduct and the defendant bears the burden of demonstrating prejudice." *United States v. Loud Hawk*, 628 F.2d 1139, at 1152 (9th Cir., 1979) (en banc).[1] Among the factors to be considered in weighing the culpability of the government's conduct are

whether the evidence was lost or destroyed while in its custody, whether the Government acted in disregard for the interests of the accused, whether it was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification. . . . It is relevant also to inquire whether the government attorneys prosecuting the case have participated in the events leading to loss or destruction of the evidence, for prosecutorial action may bear upon existence of a motive to harm the accused.

*Id.*

Tercero concedes that there is no evidence that the government's loss or destruction of the photographs was in bad faith. Furthermore, there is no reason to suspect that the prosecutors themselves were involved in the destruction of the photographs; indeed they made diligent efforts to find them. While we have warned that the government "flirt[s] with the danger of reversal any time evidence is lost or inadvertently destroyed," *United States v. Heiden*, 508 F.2d 898, 903 n. 1 (9th Cir. 1974), the government conduct here is substantially less egregious than that involved in *Heiden.*

In weighing the degree of prejudice a defendant has suffered by losing the evidence, a court may consider

the centrality of the evidence to the case and its importance in establishing the ele-

ments of the crime or the motive or intent of the defendant; the probative value and reliability of the secondary or substitute evidence; the nature and probable weight of factual inferences or other demonstrations and kinds of proof allegedly lost to the accused; the probable effect on the jury from absence of the evidence, including dangers of unfounded speculation and bias that might result to the defendant if adequate presentation of the case requires explanation about the missing evidence.

*United States v. Loud Hawk, supra,* at 1152. The photographs sought by Tercero were neither central nor essential to his defense. With them he hoped to counter the government's corroboration of Florence's testimony that Tercero was wearing a white T-shirt and jeans on the night of his arrest.[2] But with one photograph of Tercero wearing such clothes already before the jury without defense objection, the addition of two more photographs, even if they showed Tercero wearing a coat, would have proved very little. The authenticity of the photograph that the government introduced was unquestioned. At most, the additional photographs might have proved that, at or after his arrest, Tercero had removed a coat or changed clothes. Moreover, Florence had already admitted on cross-examination that he had no independent recollection of the clothing Tercero was wearing that night.[3] Thus, not only were the photographs of remote substantive value, they also could serve no significant impeachment purposes. Tercero does not allege that the absence of the photographs hampered the testimony of any defense witness or decreased the probative value of that testimony. Indeed, none of the defense witnesses testified as to what Tercero was wearing on the night of the arrest.

Tercero has thus failed in his burden of demonstrating any significant degree of prejudice to his defense. At the same time, it is recognized by both sides that the government's conduct was devoid of bad faith and was, at worst, negligent. While additional enlightenment by the government as to why the DEA pictures were missing would have been helpful, we conclude, on balance, that reversal of Tercero's conviction due to loss or destruction of the photographs is not warranted.

II.

█ Tercero was arrested on November 4, 1974, indicted on January 22, 1975, and the first trial commenced on July 13, 1976. The second trial took place on March 9, 10, and 13, 1978. Thus, the time between the indictment and the first trial was approximately 18 months. Tercero admits responsibility for this 18-month delay and does not claim that it violated the law. The time between the first and second trials was approximately 20 months. Tercero claims that this delay denied his constitutional right to a speedy trial and violated the Speedy Trial Act, 18 U.S.C. § 3161(e).

The right to a speedy trial "is as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. North Carolina,* 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). The Supreme Court has identified four factors that courts must consider in deciding whether a defendant's right to speedy trial has been violated: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant from the delay. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We have followed this four-pronged analysis, *United States v. Graham,* 538 F.2d 261, 263

---

2. Florence had testified on direct examination that the man who showed him the marijuana in the garage wore a white T-shirt and jeans, and that Tercero wore such clothes when arrested. He conceded on cross-examination, however, that his recollection of what Tercero was wearing was "influenced" by his recent review of the photograph taken immediately after Tercero's arrest, and that he could not say that he

"honestly remembered what Tercero was wearing the night of the arrest without looking at that picture." On redirect examination, the government offered into evidence the photograph of Tercero wearing a white T-shirt and showed it to the jury.

3. *See* note 2, *supra.*

(9th Cir.), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 294 (1976); *United States v. Simmons,* 536 F.2d 827, 829 (9th Cir.), *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976), which "necessarily compels courts to approach speedy trial cases on an ad hoc basis." *Barker v. Wingo, supra,* 407 U.S. at 530, 92 S.Ct. at 2192.

The length of the delay, in addition to being crucial to the ultimate determination, is a triggering factor that initially causes the court to undertake the balancing analysis. *Id.* at 530, 92 S.Ct. 2182; *United States v. Graham, supra,* 538 F.2d at 263. The 20-month period between Tercero's first and second trials is clearly adequate, as the government concedes, to invoke the *Barker* balancing analysis. *Id.,* at 263 (12-month delay); *United States v. Simmons, supra,* 536 F.2d at 830–31 (six-month delay).

Tercero's second trial was delayed pursuant to a stipulation entered into by the government and Tercero's counsel to await the completion of another criminal prosecution of Tercero then pending in the district court of Minnesota. Such a delay is not the deliberate attempt to hamper the defense that the Supreme Court has said should be weighed heavily against the government. *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. 2182, 2192. Still, it was not necessarily justified. Preparation for trial in both Minnesota and Arizona could have been undertaken at the same time. Compared to culpable government conduct intended to hamper the defense, the reason here "should [weigh] less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*

During the 20-month period between the first and second trials, Tercero never attempted to spur the government into action by asserting his right to a speedy trial. Under normal circumstances, such a failure to assert the right to a speedy trial would weigh heavily against him. *See id.* at 532, 92 S.Ct. 2182. In this case, however, there is uncontroverted evidence in the record that Tercero was unaware of the stipulation

entered into by his counsel and the government and, in fact, that he never suspected he could be prosecuted again for the offense of November 4, 1974. Under such circumstances Tercero's failure to assert the right should not count in the balance against him. *Id.* at 528–29, 92 S.Ct. 2182.

The final factor to be considered under the *Barker* analysis is the degree of prejudice to the defendant. Such prejudice must be considered in light of the interests that the speedy trial right was designed to protect: to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused, and to limit the possibility that the defense will be impaired. *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2193. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Only the latter two interests apply in this case because Tercero was not incarcerated during the period between the first and second trials.

Any impending criminal prosecution may "seriously interfere with the defendant's liberty, whether he is free on bail or not, . . . disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). Tercero, however, does not claim that he suffered any of these anxieties or concerns during the 20-month interim. Indeed, for him to make this claim would be inconsistent with his assertion that, after the first trial, he never suspected that he would again be prosecuted for the events of November 4, 1974.

The ability to prepare an adequate defense, being the most important interest that may be prejudiced by delay of trial, warrants close examination by a reviewing court. Witnesses may die or disappear, their memories may fade, or evidence may be lost. Even upon close examination, however, Tercero has failed to show that the 20-month delay between the first and

second trials caused any impairment. Every defense witness that testified at the first trial was present at the second trial and all testified then except for Tercero himself. The only time-caused lapse of memory identified by Tercero is irrelevant because it was suffered by Florence, the key prosecution witness, and tended to undermine Florence's testimony concerning what Tercero wore on the night of his arrest. Indeed, the record indicates that the memories of crucial defense witnesses improved with time.[4] Tercero did not allege that the government's loss of the arrest photographs referred to above is attributable to the 20-month interim. Thus, Tercero, has not identified any evidence, spoken or otherwise, that was not produced at the second trial simply because of the passage of time.

Weighing all of the *Barker* factors together, the only questionable conduct by the government that was a cause of the 20-month delay was to agree with Tercero's attorney to await the outcome of a separate trial in Minnesota. Tercero was not incarcerated, suffered no undue anxiety or concern during the delay, and was not rendered less able to present a defense. As Tercero suffered no impairment of any interest protected by the Sixth Amendment, it would be an affront to justice to reverse his conviction, vacate the sentence, and dismiss the indictment, the only remedy available when the Sixth Amendment right to a speedy trial has been violated, *Struck v. United States*, 412 U.S. 434, 439–40, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), simply because the government may have acted somewhat improvidently.[5]

■ Finally, Tercero claims that the delay constituted a violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* That claim, however, is not properly before us because Tercero failed to raise it in the district court.[6] Fed.R.Crim.P. 12.

### III.

■ During the second trial, Tercero requested that the district court rule in advance upon the admissibility, for impeachment purposes, of Tercero's prior narcotics convictions. In addition to referring the district court to the testimony that he had given at the prior trial, Tercero requested that the court hear his testimony outside of the presence of the jury to help determine whether he could properly be so impeached. Tercero's counsel also made an offer of proof that Tercero's testimony would be limited to his claim that he was not involved in the marijuana transaction at issue. The district judge refused to make the advance ruling.

Tercero claims that the district court's refusal to rule chilled his constitutional

**4.** Defense witness Vasquez testified at the first trial that he was not sure who agent Florence met at the front door of the house, that he did not remember who was in the garage with Florence, and that he was not sure whether Tercero was in the garage at the time of the arrest. At the second trial, however, Vasquez testified that he was positive that Florence met "Eddie" at the door, that he was "pretty certain" Tercero was not in the garage with Florence, and that "Juan," not Tercero, was in the garage at the time of the arrest.

Juan, another defense witness, testified at the second trial that the true drug dealers made good their escape when the lights were turned out. At the first trial, however, he made no mention of the lights going out. At the second trial he also added considerable detail concerning the commotion surrounding the arrest.

**5.** Tercero further contends that the stiupulation entered into by the government and his defense counsel was not binding upon him because he was not aware of his attorney's joining in the delay and did not personally sign the stipulation. Because the *Barker* analysis reveals no Sixth Amendment violation, however, we need not reach this question.

**6.** The memorandum submitted by Tercero to the trial court in support of his motion to dismiss for violation of his right to a speedy trial relied solely upon the Sixth Amendment. Moreover, the record shows that Tercero never mentioned the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, in the district court.

Tercero alternatively claims that the stipulation to continue the Arizona case pending the outcome of the Minnesota trial was violated when the second Arizona trial was set before completion of the Minnesota action without his consent. We conclude, however, that dismissal of the case in Minnesota was a sufficient completion to satisfy the wording of the stipulation.

right to testify and, therefore, unduly prejudiced his defense. In resolving this issue, we must answer two questions: whether the refusal to rule in advance was error, and, if so, whether such error was prejudicial.[7]

■ When, as here, the crime for which a defendant was previously convicted does not involve dishonesty or false statements, Federal Rule of Evidence 609(a) requires a trial court to weigh the probative value of admitting the prior conviction into evidence against its prejudicial impact to the defendant. Because such a balancing analysis necessarily depends upon the myraid developments and circumstances of the trial, the decision as to when a ruling may most properly be made should be committed to the sound discretion of the trial judge. Those circuits which have considered this timing question agree, *United States v. Oakes*, 565 F.2d 170, 173–74 (1st Cir. 1977); *United States v. Johnston*, 543 F.2d 55, 59 (8th Cir. 1976); *United States v. Cox*, 428 F.2d 683, 689 (7th Cir.), *cert. denied*, 400 U.S. 881, 91 S.Ct. 127, 27 L.Ed.2d 120 (1970); *United States v. Crisona*, 416 F.2d 107, 117 (2d Cir. 1969), *cert. denied*, 397 U.S. 961, 90 S.Ct. 991, 25 L.Ed.2d 253 (1970), and we have agreed in dicta, *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979) (en banc). *See id.* at 1188 (Wallace, J., concurring).

In this case, however, we need not decide whether the district judge abused his discretion by refusing to rule in advance as to the admissibility of prior convictions. The record is clear that Tercero did not demonstrate, as he must, that he was prejudiced by the ruling. *United States v. Cook, supra* at 1188 (Wallace, J., concurring). To do so, Tercero must show that he would have testified but for the court's refusal to rule in advance. *Id.* This he cannot do. The record plainly reveals that even if the court had ruled in advance that the prior convictions were inadmissible, Tercero would not have testified due to the existence of a potential rebuttal witness, one who had previous drug dealings with Tercero.[8] Consequently, Tercero cannot claim injury as a result of the court's ruling.

To counter this effect of the potential rebuttal witness, Tercero argues in his reply brief that the threatened rebuttal testimony would have been inadmissible. This argument is not relevant to the issue before us. The record clearly indicates that Tercero would not have testified as long as the trial court refused to rule in advance on the admissibility of the rebuttal witness' testimony. Thus, the issue is not the admissibility of the rebuttal testimony, but rather the propriety of the trial court's refusal to rule in advance on that admissibility. Tercero's reply brief only obscurely raises this issue, and cites no cases holding that such a refusal to rule is error. We conclude that it was not.

As already mentioned, the decision as to whether a court should rule upon the admissibility of prior conviction evidence in ad-

---

**7.** Pursuant to *United States v. Murray*, 492 F.2d 178 (9th Cir. 1973), Tercero could not have raised on appeal his claim that the court erred in failing to rule on the admissibility of his prior conviction because he did not take the stand. *We recently overturned Murray however, in United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979) (en banc).

**8.** The following sidebar discussion occurred between Tercero's counsel and the court:

MR. REMPE: I realize that. If I could just *finish on the record I also would like to put in I would not put Mr. Tecero [sic] on the stand if the Court is going to allow Mr. Platt to testify for the Government to show prior knowledge and intent or absent mistake as to prior drug dealings.* According to the trial memorandum, Mr. Noyes provided to me he will call Mr. Platt to testify that Mr. Tecero [sic] had dealt marijuana with him and—

THE COURT: Mr. Noyes is not required to tell you who he will call or what they will testify to. If he *did* that he was *doing more* than he had to. I don't know what he intends to do and until something comes before me I don't—I don't give rulings in anticipation of what somebody is going to do. I will rule when it is presented to me. There is nothing before me now.

MR. REMPE: *Well, based on the fact that I* don't know what the Court would rule *I'm going to advise my client not to take the stand.*

(Emphasis added.)

 

vance of the defendant's testimony rests within the sound discretion of the trial judge. *United States v. Cook, supra,* 608 F.2d at 1187; *United States v. Oakes, supra,* 565 F.2d at 173. *See also United States v. Evanchik, supra,* 413 F.2d 950, 953 (2d Cir. 1969). If such is true as to prior-conviction impeachment evidence, *a fortiori* it is true as to rebuttal-witness impeachment evidence, the content and nature of which is less certain than that of a prior conviction.

In reviewing for abuse of discretion, "[t]he test is not what this court would have done under the same circumstances." *Bowles v. Quon,* 154 F.2d 72, 73 (9th Cir. 1946). "An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Id.*

If admitted, the rebuttal witness testimony would have revealed Tercero's past involvement with marijuana sales. The rebuttal nature of this impeachment evidence depended largely upon the self-portrait that Tercero would attempt to paint before the jury. In explaining his reasons for refusing to rule in advance, the trial judge explained that he "would not give an advisory opinion as to what [he] would do until such time as [he] heard the testimony of whatever witness it was to be." Although Tercero's lawyer had avowed that Tercero's testimony would be limited to the testimony rendered by Tercero at his first trial, a transcript of which was before the district judge, the judge apparently felt incapable of rendering a decision as to the rebuttal testimony on the basis of the prior trial's transcript alone. In addition, the record indicates some uncertainty on the part of the district judge and Tercero's counsel as to whether the rebuttal witness would even testify. In view of these circumstances, we cannot say that the district judge's refusal to rule upon the rebuttal-evidence admissibility before viewing Tercero's testimonial portrait was plain error, unjustified, or clearly illogical. We find no abuse of discretion.

Because the district judge did not abuse his discretion in refusing to rule in advance upon the admissibility of the rebuttal witness' testimony, the fact remains that Tercero would not have taken the stand in his own defense even if the court had ruled in advance to exclude the evidence of Tercero's prior convictions. Therefore, Tercero cannot claim that he was prejudiced by the judge's refusal to rule on the admissibility of the prior convictions.

AFFIRMED.