**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

v.

DENISE ROBERTSON,
            *Defendant-Appellant.*

No. 16-10385

D.C. No.
2:14-cr-01466-
JJT-1

OPINION

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted January 8, 2018
San Francisco, California

Filed July 20, 2018

Before:  J. Clifford Wallace, Johnnie B. Rawlinson,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Wallace

# SUMMARY[*]

## Criminal Law

The panel affirmed convictions for theft of mail by a postal employee in violation of 18 U.S.C. § 1709, and possession of stolen mail in violation of 18 U.S.C. § 1708.

The panel held that the district court did not err in denying the defendant's motion to dismiss the indictment on due process grounds based on the government's failure to preserve a video of a Postal Service employee parking lot. The panel held that the district court's finding that the investigating agent did not act in bad faith was not clearly erroneous, and that the exculpatory value of the video was speculative.

The panel held that the district court did not abuse its discretion by failing to instruct the jury on lost or destroyed evidence as a sanction for the government's failure to preserve the parking lot video.

The panel held that the district court did not abuse its discretion in ruling that a conversation between the prosecutor and two investigating agents outside the courtroom did not violate Fed. R. Evid. 615, which provides that, at a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Addressing an open question, the panel held that Rule 615 prohibits a sequestered witness from not only

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

attending a hearing or trial, but reading transcripts from it. The panel held that the district court acted within its discretion by determining that the appropriate sanction for the government's allowing two agent witnesses to review transcripts of prior testimony was to allow the defense to cross-examine the witnesses about their exposure to the transcripts.

The panel held that the district court did not abuse its discretion in denying the defendant's request for production of an agent's notes under the Jencks Act. The panel clarified that unless a defendant makes a threshold showing that notes sought pursuant to the Jencks Act may qualify as a "statement" under the Act, the district court is not obligated to review the notes *in camera* before refusing to compel production. The panel concluded that the defendant did not make that threshold showing.

The panel rejected the defendant's argument that the district court's disjunctive jury instruction on embezzlement of mail by a postal employee – which allowed the jury to convict her solely on a finding that "she came into possession" of the mail, rather than a showing of both entrustment *and* possession – was plain error. The panel explained that the jury instruction tracked the language of section 1709, and that the government may charge in the conjunctive and prove in the disjunctive.

**COUNSEL**

Celia Rumann (argued), Tempe, Arizona, for Defendant-Appellant.

Peter S. Kozinets (argued), Assistant United States Attorney; Krissa M. Lanham, Deputy Appellate Chief; Elizabeth A. Strange, Acting United States Attorney; United States Attorney's Office, Phoenix, Arizona; for Plaintiff-Appellee.

**OPINION**

WALLACE, Circuit Judge:

Denise Robertson, a former letter carrier for the United States Postal Service, appeals from her jury convictions for theft of mail by a postal employee in violation of 18 U.S.C. § 1709, and for possession of stolen mail in violation of 18 U.S.C. § 1708. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I.

The United States Postal Service (USPS) is charged with providing secure and reliable delivery of the mails to "bind the Nation together" through the "correspondence of the people." 39 U.S.C. § 101. Robertson worked as a USPS letter carrier assigned to the USPS Arcadia Station in Phoenix, Arizona.

This case began when the USPS Office of the Inspector General (OIG) began receiving complaints from customers in the Phoenix area concerning gift cards that were mailed but never reached the intended recipients. In June 2014, USPS OIG Agent Patrick Longton investigated these

complaints, and determined that Robertson might have been involved. Longton came to this conclusion based on evidence that (1) the missing gift cards were used by Robertson's adult daughter Melissa, who lived with Robertson, and (2) the letters containing the gift cards had been routed through the Arcadia Station on days Robertson was on duty.

His suspicion piqued, Agent Longton decided to begin surveillance of Robertson as she performed her duties at the Arcadia Station. On the morning of June 26, 2014, from a concealed walkway inside the post office, Agent Longton observed Robertson remove two greeting card-type letters from a tray of mail not assigned to her route, and place those letters with mail marked for her route. After Robertson left to deliver her route, OIG agents arranged for the station supervisor to place several "test letters" in the collection hamper near Robertson's work station. Test letters are purportedly "real" letters used by the OIG to test the integrity of suspected postal employees.

Upon Robertson's return from her route, OIG agents made a video recording of her on the work floor. The video shows Robertson walk to and look through the collection hamper for outgoing mail on three different occasions, during which she removed several greeting card-type letters, including some of the OIG test letters. The video shows Robertson carry the letters back to her work station, bundle them, place the bundles in a large purse, and cover the opening of the large purse with a smaller purse. Shortly after Robertson's third trip to the collection hamper, OIG agents left their concealed station, found Robertson on the work floor, and arrested her. They did not apply handcuffs.

After arresting Robertson, the agents asked her to bring her belongings to the station manager's office. Robertson

brought her purse into the office on a plastic mail tray and placed the tray and her purse on a postal cart against the wall. Robertson declined to be interviewed, but consented to a search of her purse. Agent Longton and another agent searched Robertson's purse, but found no mail. Agents also searched the work floor for the missing bundles, to no avail. After the search, Robertson was released, and her vehicle, which was parked in the employee parking lot, was secured as evidence.

That night, Agent Longton and other OIG agents took shifts surveilling Robertson's car until they could obtain a warrant to search it. During his shift, Agent Longton briefly returned to the station manager's office to retrieve Robertson's purse. After a quick search of the office, he found two bundles of mail at the bottom of the hamper of the postal cart on which Robertson had placed her purse earlier that day. The recovered mail consisted of more than 20 greeting card-type letters, including some of the OIG test letters.

The next day, June 27, 2014, OIG agents executed a search warrant on Robertson's car, recovering 52 pieces of mail. Much of the recovered mail was postmarked June 25, 2014 and was scheduled for delivery on Robertson's route on June 26. The recovered mail also included a test letter that agents had placed in a neighborhood collection box on Robertson's route the previous day.

## II.

On November 5, 2014, a grand jury indicted Robertson on seven counts of theft of mail by a postal employee under 18 U.S.C. § 1709, and seven counts of possession of stolen mail under 18 U.S.C. § 1708. Prior to trial, Robertson moved to dismiss the indictment, arguing that Agent Longton failed

to preserve security camera footage of the Arcadia Station employee parking lot from the day of her arrest. Robertson asserted this video footage "would have exonerated [her] completely." The district court denied the motion after an evidentiary hearing, finding no bad faith on the part of the government.

The trial began on October 27, 2015, and lasted for 13 days. Robertson's defense was that Agent Longton was not a credible witness; that it would have been nearly impossible for her to remove mail from her purse and drop it into the postal cart while in the presence of OIG agents after her arrest; and that the evidence was insufficient to prove that the mail Robertson was alleged to have embezzled was sorted or processed at the Arcadia Station at a time Robertson was at the station.

During the trial, Robertson requested a jury instruction on lost or destroyed evidence based on the government's failure to preserve the parking lot video. The district court denied the request. Later during the trial, Robertson requested production of Agent Longton's notes from his initial conversation with a customer who reported one of the missing gift cards. The district court denied that request as well.

The jury convicted Robertson on all counts. The district court sentenced Robertson to concurrent terms of nine months of imprisonment on each count, followed by three years of supervised release. The district court also ordered Robertson to pay a special assessment and restitution. Robertson timely appealed.

III.

Robertson argues we should reverse her convictions on the following grounds: (1) the district court erred in denying her motion to dismiss the indictment; (2) the district court abused its discretion by failing to give a jury instruction on lost or destroyed evidence; (3) the district court erred in not imposing an appropriate sanction for the government's violation of the court's witness exclusion orders; (4) the district court abused its discretion by not compelling production of Agent Longton's notes under the Jencks Act, 18 U.S.C. § 3500; and (5) the district court's jury instruction on theft of mail by a postal employee misstated the law. We address these arguments in turn.

A.

We begin with Robertson's argument that the district court erred in not dismissing the indictment on due process grounds for the government's failure to preserve video of the employee parking lot. The district court denied Robertson's motion on the ground that the government did not act in bad faith, and that the exculpatory value of the video was speculative. Robertson contends the parking lot video, which was erased as part of an automatic 30-day deletion process, would have "conclusively shown" who had access to her vehicle the day she was arrested.

"We review de novo a due process claim involving the government's failure to preserve potentially exculpatory evidence." *United States v. Flyer*, 633 F.3d 911, 915–16 (9th Cir. 2011). "We review factual findings, such as the absence of bad faith, for clear error." *Id.* at 916.

The government's failure to preserve potentially exculpatory evidence rises to the level of a due process

violation only if the defendant shows that the government acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). "The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed, because without knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith." *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015).

The district court's finding that Agent Longton did not act in bad faith was not clearly erroneous. Although Longton was made aware of the possible existence of the parking lot video, the record does not show he had knowledge of the video's apparent exculpatory value at the time it was deleted, or that he knew of the automatic 30-day deletion process. Longton testified that by the time he contacted the agency responsible for the station's external security cameras, the parking lot video had been deleted as part that agency's normal procedures without him having viewed it. In addition, the record supports a finding that the exculpatory value of the parking lot video was speculative—Longton testified that while the relevant security camera could show in general where Robertson's car was parked, it offered only a partial view that would not have shown someone gaining access to the trunk and, in any event, would not have allowed conclusive identification of any specific individual seen on camera. On this record, the district court did not clearly err in finding Agent Longton did not act in bad faith. *See United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (holding that the government did not act in bad faith in failing to preserve evidence when the exculpatory value of the evidence "was not obvious"); *Cunningham v. City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003) (concluding that a detective's failure to gather potentially exculpatory

evidence did not show bad faith where the value of the evidence was "speculative").

Robertson argues that Agent Longton's conduct—that is, his failure to obtain immediately the parking lot video as soon as he was put on notice of its potential existence—is itself sufficient to compel a bad faith finding. We disagree. Longton testified he learned about the possibility of the parking lot video when he saw it mentioned as part of the postal union's grievance against USPS management on Robertson's behalf. Neither Robertson nor her counsel wrote to the OIG or to the government to preserve the video. Nor did the union's request explain how or why the parking lot video might contain exculpatory evidence. At most, Longton was slow to obtain evidence of speculative value of which he had been indirectly put on notice. This is insufficient to establish that Longton made "a conscious effort to suppress exculpatory evidence" such that bad faith can be inferred from his conduct alone. *Zaragoza-Moreira*, 780 F.3d at 980, *quoting California v. Trombetta*, 467 U.S. 479, 488 (1984).

Robertson also argues the district court's failure to find bad faith contravenes our decision in *Zaragoza-Moreira*. In that case, the defendant was arrested by border patrol officers while standing in a pedestrian line for admission into the United States after a pat down search led to the discovery of drugs on her person. 780 F.3d at 974–75. During the interview following her arrest, the defendant asserted she was coerced into carrying the drugs, and that while standing in the pedestrian line she tried to draw the attention of law enforcement by making noise and moving around. *Id.* at 975–76. Despite defendant's claim of duress, and her insistence that her actions while standing in line supported her claim, the agent who interviewed the defendant did not preserve video of the pedestrian line. *Id.* at 976–77. We

concluded that the district court clearly erred in not finding bad faith under these circumstances, explaining that "[f]rom the beginning to the end of Agent Alvarado's hour-long interview with Zaragoza, Zaragoza repeatedly alerted Alvarado to her duress claim and the potential usefulness of the pedestrian line video footage." *Id.* at 979.

The instant case is distinguishable from *Zaragoza-Moreira*. In *Zaragoza-Moreira* there was no dispute about the potential value of the unpreserved video evidence. The agent in that case knew at the time she interviewed the defendant that the pedestrian line was under constant video surveillance and that the video was directly relevant to defendant's claim of duress. The government did not argue that the video would not show whether defendant was "making a lot of noises" and making herself "obvious," as she asserted. *Id.* at 978. By contrast, in this case, it is completely speculative whether the parking lot video was potentially useful to Robertson's defense. As mentioned above, Agent Longton testified that the relevant security camera did not offer an unobstructed view of Robertson's car, and that it would not have been possible to identify specific individuals seen on the video. In addition, unlike the defendant in *Zaragoza-Moreira*, neither Robertson nor the union made any affirmative assertion that would have put Agent Longton on notice of the relevance of the video to Robertson's defense. Therefore, compared to the video at issue in *Zaragoza-Moreira*, the exculpatory value of the video here was almost entirely speculative. Robertson's reliance on *Zaragoza-Moreira* is unavailing.

The district court did not err in denying Robertson's motion to dismiss the indictment.

B.

Robertson next argues the district court committed reversible error by failing to instruct the jury on lost or destroyed evidence as a sanction for the government's failure to preserve the parking lot video. "We review a district court's refusal to give an adverse inference instruction, when properly raised by the appellant, for abuse of discretion." *Sivilla*, 714 F.3d at 1172. Under the abuse of discretion standard, we ask first whether the district court applied the correct legal rule, and then determine whether the court's application of the legal rule was either "(1) illogical, (2) implausible, or (3) without support" in the record. *Id.* at 1173.

Robertson argues the district court abused its discretion by identifying the incorrect legal standard when it considered her request for a lost or destroyed evidence instruction. We disagree. The rule governing sanctions for lost or destroyed evidence is found in the controlling concurrence in *United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir. 1979) (en banc) (Kennedy, J., concurring), *reversed on other grounds in United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008). In considering Robertson's request for a lost or destroyed evidence instruction, the district court reviewed this circuit's relevant model instruction and comment, the first sentence of which quotes the *Loud Hawk* balancing test as the appropriate standard. *See* Ninth Circuit Manual of Model Criminal Jury Instructions, No. 4.18 (July 2010). Therefore, by reviewing this circuit's model instruction and comment, the district court ipso facto identified the correct legal standard.

Because the district court identified the correct legal standard, we may reverse only if its application of *Loud Hawk* was "(1) illogical, (2) implausible, or (3) without

support" in the record. *Sivilla*, F.3d at 1173. Under *Loud Hawk*, an instruction concerning evidence lost or destroyed by the government is appropriate when the balance between "the quality of the Government's conduct and the degree of prejudice to the accused" weighs in favor of the defendant. *Loud Hawk*, 628 F.2d at 1152. The government bears the burden of justifying its conduct, while the defendant bears the burden of demonstrating prejudice. *Id.*

In assessing the quality, or "culpability," *United States v. Tercero*, 640 F.2d 190, 192 (9th Cir. 1980), of the government's conduct, we consider whether the evidence was lost or destroyed while in the government's custody, whether the government acted in disregard of the defendant's interests, whether the government was negligent, whether the prosecuting attorneys were involved, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification. *Loud Hawk*, 628 F.2d at 1152.

Here, the government's conduct, while not entirely blameless, fell within a general range of reasonableness. Although the parking lot video was automatically recorded over while in the government's custody, the government did not act in disregard of Robertson's interests because the exculpatory value of the evidence was not apparent. In addition, even if the better practice would have been for Agent Longton to request the video sooner, it is significant that neither the OIG agents nor the government attorneys prosecuting the case participated in the events leading to the loss of the evidence. *See Tercero*, 640 F.2d at 192 (concluding that the government justified its conduct with respect to lost or destroyed evidence where there was "no reason to suspect that the prosecutors themselves were involved in the destruction of the [evidence]"). Rather, the

video was erased as part of the 30-day automatic override process of the Postal Inspection Service, a separate agency not involved in the case against Robertson. In total then, the government's conduct may have been imperfect, but it was not unreasonable or in bad faith.

We turn now to the second half of the *Loud Hawk* test, the prejudice to the defendant. In analyzing prejudice, we consider the centrality and importance of the lost evidence to the case, the probative value and reliability of secondary or substitute evidence, the nature and probable weight of inferences and kinds of proof lost to the accused, and the probable effect on the jury from the absence of the evidence. *Loud Hawk*, 714 F.3d at 1152.

In this case, any prejudice to Robertson was minimal. The parking lot video was not central to the case because the government, with the exception of one test letter, did not argue that any of the mail cited in the indictment was placed in Robertson's car on June 26, 2014. The nature of the inferences and proof lost to Robertson also cuts against a finding of prejudice because it is not clear whether the video would have provided an unobstructed view of Robertson's car. Finally, the probable effect on the jury from the absence of the video was not significantly prejudicial because Robertson's counsel was permitted, and did, argue before the jury that Agent Longton failed to preserve the video. Under these circumstances, and in light of the generally reasonable quality of the government's conduct, the district court did not need to find that prejudice to Robertson required a lost or destroyed evidence instruction under *Loud Hawk*. There was no abuse of discretion.

C.

Robertson next argues the district court erred by not imposing an appropriate sanction for what she claims were violations of Federal Rule of Evidence 615 by the government. We review the district court's determination of the appropriate sanction for a Rule 615 violation for abuse of discretion. *See United States v. Hobbs*, 31 F.3d 918, 921 (9th Cir. 1994).

Rule 615 provides, in relevant part, that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. This rule of exclusion applies to both pretrial evidentiary hearings and to the guilt phase of the trial. *United States v. Brewer*, 947 F.2d 404, 407–08 (9th Cir. 1991). The purpose of a Rule 615 exclusion order is to "reduce the danger that a witness's testimony will be influenced by hearing the testimony of other witnesses, and to increase the likelihood that the witness's testimony will be based on her own recollections." *Hobbs*, 31 F.3d at 921; *see* Fed. R. Evid. 615 advisory committee's note to 1972 proposed rule ("The efficacy of excluding or sequestering witnesses has long been recognized as a means of discouraging and exposing fabrication, inaccuracy, and collusion.").

Robertson first challenges the district court's ruling that a conversation on day three of the trial between the prosecutor, Agent Longton, and another OIG agent outside the courtroom did not violate Rule 615. Robertson asserted that she overheard the prosecutor and the agents discussing "something to the effect that . . . they had messed up with the fingerprints and the fingerprint examiner."

The district court did not abuse its discretion in not finding a Rule 615 violation. After the possible violation was

brought to its attention, the district court questioned the prosecutor and Agent Longton about the conversation, both of whom told the court that the conversation concerned the logistics of transporting the fingerprint examiner to the airport. When asked directly by the court whether the conversation related to the fingerprint examiner's testimony or anything case related, Agent Longton replied that it did not. Robertson's counsel herself stated "I am allowing for the fact that it could be innocent and that we would all just be more careful going forward." Given the lack of specificity of Robertson's allegations, and the government's representation that witness testimony was not part of the conversation, the district court did not abuse its discretion in concluding the conversation did not violate Rule 615.

Robertson next argues the district court abused its discretion by not imposing a more severe sanction when the government violated Rule 615 by allowing two agent witnesses to review transcripts of a pretrial evidentiary hearing (at which Agent Longton testified) before the two agents testified at trial. The district court stated that it was not certain whether allowing the agents to review transcripts constituted a Rule 615 violation, but that to the extent it was, the appropriate remedy was to permit cross-examination of the agents and allow the defense to address the issue in closing arguments.

Before we explain why we conclude the district court's chosen sanction was not an abuse of discretion, we address first an open question in our circuit relevant to Robertson's argument: whether Rule 615 prohibits a sequestered witness from not only attending a hearing or trial, but reading transcripts from it. The government and the district court point out that Rule 615, by its terms, does not preclude potential trial witnesses from reviewing transcripts of a prior

proceeding before testifying. Under this view, there is no Rule 615 violation for reviewing prior testimony from a transcript so long as the witness was not in the courtroom to hear that testimony.

In our view, an interpretation of Rule 615 that distinguishes between hearing another witness give testimony in the courtroom and reading the witness's testimony from a transcript runs counter to the rule's core purpose—"to prevent witnesses from tailoring their testimony to that of earlier witnesses." *Larson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008) (citation omitted). The danger that earlier testimony could improperly shape later testimony is equally present whether the witness hears that testimony in court or reads it from a transcript. An exclusion order would mean little if a prospective witness could simply read a transcript of prior testimony he was otherwise barred from hearing. Therefore, we join those circuits that have determined there is no difference between reading and hearing testimony for purposes of Rule 615. *See United States v. McMahon*, 104 F.3d 638, 642–45 (4th Cir. 1997) (affirming the district court's conclusion that a witness violated a Rule 615 exclusion order by reading daily trial transcripts); *United States v. Friedman*, 854 F.2d 535, 568 (2d Cir. 1988) (recognizing that "the reading of testimony may violate an order excluding witnesses issued by a district court under Rule 615"); *United States v. Jimenez*, 780 F.2d 975, 980, n.7 (11th Cir. 1986) (concluding that a witness violated a Rule 615 exclusion order by reading the testimony of another agent witness from a prior mistrial); *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1373–74 (5th Cir. 1981) (holding that providing a witness transcribed portions of another witness's testimony in preparation for his court appearance constitutes a violation of Rule 615). A trial witness who reads testimony from the transcript of an earlier,

related proceeding violates a Rule 615 exclusion order just as though he sat in the courtroom and listened to the testimony himself.

In light of our clarification of Rule 615's scope, the district court's suggestion that reviewing transcripts of prior testimony cannot violate the rule was incorrect. However, in this case the district court explicitly assumed a violation occurred, and then determined that the appropriate sanction was to allow the defense to cross-examine the agent witnesses about their exposure to the transcript. We have long recognized cross-examination as a suitable remedy for a Rule 615 violation, at least where, as here, the violation of the rule was not deliberate. *Hobbs*, 31 F.3d at 921–22. Robertson makes no argument for why this common remedy was insufficient under the circumstances presented here. The district court carefully explored the alleged violation, considered the possible sanctions, determined that neither the prosecutor nor the agent witnesses intended to violate the exclusion order, and ultimately decided that cross-examination of the witnesses in front of the jury was sufficient to cure any unintentional violation. This course of action was well within the district court's discretion. *See United States v. English*, 92 F.3d 909, 913 (9th Cir. 1996) (district court's decision to not disqualify a witness who violated an exclusion order was not an abuse of discretion where there was no indication that the side calling the witness intended to violate the order); *cf. United States v. Arias-Santana*, 964 F.2d 1262, 1266 (1st Cir. 1992) ("Even in the face of an established violation of a court-ordered witness sequestration order, the sanction determination is committed to the sound discretion of the trial court.").

## D.

Robertson's fourth contention is that the district court erred in denying her request for production of Agent Longton's notes under the Jencks Act, 18 U.S.C. § 3500. "We review a district court's denial of a motion to produce a witness' statement pursuant to the Jencks Act for abuse of discretion." *United States v. Boshell*, 952 F.2d 1101, 1104 (9th Cir. 1991).

After a government witness testifies on direct examination, the Jencks Act requires the district court, on motion of the defendant, to order production of any "statement" of the witness in possession of the government that relates to the subject matter of the witness's testimony. 18 U.S.C. § 3500(b). Under the Act, the term "statement" includes "a written statement made by [the] witness and signed or otherwise adopted or approved by him," or a "substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement." 18 U.S.C. § 3500(e). We have held that "notes and reports" of government agents who testify for the government may constitute a "statement" subject to production under the Jencks Act. *United States v. Johnson*, 521 F.2d 1318, 1319–20 (9th Cir. 1975).

After Agent Longton's testimony indicated he may have taken notes of a June 12, 2014 conversation with one of the customers who complained about a missing gift card, defense counsel requested the district court to order production of the notes. The district court then questioned the government about whether the notes in question were required to be disclosed under any of the "affirmative disclosure theories" raised by the defense. The government responded that none of Agent Longton's handwritten notes had "any substance to them," but instead contained

fragmentary writings "like phone numbers here and there and whatnot." The district court concluded the notes were not subject to production under the Jencks Act.

Robertson contends the Jencks Act required the district court to conduct an *in camera* review of Longton's notes before determining the notes were not subject to production. We disagree. Although our case law in this area has not been entirely clear, we have previously stated that a defendant must make a threshold showing that notes sought pursuant to the Jencks Act constitute a "statement" before the district court will be required to review the notes *in camera*. *See United States v. Henke*, 222 F.3d 633, 642–43 (9th Cir. 2000) (concluding that defendants did not trigger the district court's obligation to review government's notes *in camera* where they made no showing the notes were used or adopted by the witness); *United States v. Michaels*, 796 F.2d 1112, 1117 (9th Cir. 1986) (holding that the district court did not abuse its discretion in refusing to order production where defendant "made no attempt to show" that the notes in question satisfied the "requirements that would qualify them as witness's statements for purposes of the Jencks Act"). Here, Robertson did not make a prima facie showing that Longton's rough notes constituted a statement under the Act. *See United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009) (citation omitted) ("[A]n agent's rough notes will not be Jencks Act statements when they are not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigator's selections, interpretations, and interpolations."). Therefore, the district court was not obligated to review the notes *in camera*.

Robertson relies on our decision in *Johnson* to argue otherwise, but *Johnson* is not to the contrary. In *Johnson*, the district court denied a defendant's request for production of

an agent's notes of the arrest and interview of the defendant, concluding that "provision of the agent's case report was enough to satisfy the requirements of the Jencks Act." 521 F.2d at 1320. We reversed, explaining that the district court was first required to decide whether the notes in question constituted a "statement" before denying the request. *Id.* at 1319. We concluded "[t]hat the notes may have constituted a Jencks Act statement was sufficient to trigger further investigation" by the district court. *Id.* at 1320.

To be sure, some of our language in *Johnson* could be read to suggest an open-ended obligation on the part of the district court to review notes *in camera* every time a defendant alleges an agent's notes are subject to production. *See id.* at 1319 ("It is the function of the trial court to determine the issue of producibility, i.e., to decide whether the notes in question constitute a 'statement' within the meaning of the Act."). But *Johnson* is not inconsistent with our later cases discussing the defendant's need to make a prima facie showing. In *Johnson*, there was no dispute that the agent's handwritten notes of the defendant's arrest and interview could qualify as a statement under the Jencks Act. We reversed the district court because the fact that the notes fell within the category of possible statements subject to production required the court to investigate further, which it failed to do. *Id.* at 1320. Here, by contrast, there is no foundation in the record on which to conclude that Agent Longton's rough notes rose to the level of a possible "statement" under the Jencks Act. *Johnson* did not discuss a prima facie showing because any such showing was satisfied there on its face. That is not the case with the incomplete notes at issue here. *See United States v. Bobadilla-Lopez*, 954 F.2d 519, 522 (9th Cir. 1992) ("[F]or production to be required [under the Jencks Act], the materials should not

only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context."); *United States v. Griffin*, 659 F.2d 932, 938 n.4 (9th Cir. 1981) ("[I]t will be the very unusual case where an agent's own thoughts will be recorded in rough interview notes with sufficient completeness or intent to communicate to be a Jencks Act statement.").

We now make it clear that unless a defendant makes a threshold showing that notes sought pursuant to the Jencks Act may qualify as a "statement" under the Act, the district court is not obligated to review the notes *in camera* before refusing to compel production. The defendant's burden in this regard is not a heavy one. We agree with the Seventh Circuit that so long as a defendant seeking production under the Jencks Act specifies with reasonable particularity that a certain document exists, that there is reason to believe the document is a "statement" under the Act, and that the government failed to provide it in violation of the Act, the district court will ordinarily be required to conduct an *in camera* inquiry into whether the document in question constitutes a statement. *See United States v. Allen*, 798 F.2d 985, 996–97 (7th Cir. 1986).

Robertson did not make a threshold showing that Agent Longton's rough notes constituted a statement under the Jencks Act. Therefore, she has not shown that the district court abused its discretion in refusing to order production of the notes.

E.

Finally, Robertson argues the district court erred by adopting a jury instruction on embezzlement of mail by a postal employee that misstated the law. Where, as here, the

defendant failed to object to the jury instruction before the district court, we review for plain error whether the instruction misstated the law. *United States v. Walls*, 784 F.3d 543, 546 (9th Cir. 2015).

Counts one through seven of the indictment charged Robertson with theft of mail by a postal employee in violation of 18 U.S.C. § 1709. Section 1709 provides:

> Whoever, being a Postal Service officer or employee, embezzles any letter, postal card, package, bag, or mail, or any article or thing contained therein entrusted to him or which comes into his possession intended to be conveyed by mail . . .; or steals, abstracts, or removes from any such letter, package, bag, or mail, any article or thing contained therein, shall be fined under this title or imprisoned not more than five years, or both.

As evident from the plain language of the statute, section 1709 treats embezzling mail and stealing mail as two separate offenses. *See also United States v. Lucarz*, 430 F.2d 1051, 1053 n.1 (9th Cir. 1970). Robertson was charged with embezzlement.

As relevant here, the indictment alleged that Robertson embezzled mail that had been "entrusted to her and which came into her possession." The district court's jury instruction, however, required the government to prove Robertson "was entrusted with *or* came into possession of" the mail she was accused of embezzling. Robertson argues that the use of the disjunctive "or" in the jury instruction was plain error because it allowed the jury to convict her of embezzlement solely on a finding that she "came into possession" of the mail, rather than a showing of both

entrustment *and* possession. We conclude Robertson's argument is without merit.

First, the jury instruction adopted by the district court tracked the language of section 1709. As stated above, section 1709 prohibits a Postal Service employee from embezzling mail matter "entrusted to him *or* which comes into his possession." 18 U.S.C. § 1709 (emphasis added). Similarly, the instructions given to the jury required the government to prove that Robertson was "entrusted with or came into possession of" the mail she was alleged to have embezzled. Because the adopted instruction accurately re-stated the elements of the statutory offense, the instruction did not misstate the law. *See United States v. Dela Cruz*, 358 F.3d 623, 626 (9th Cir. 2004) (rejecting defendant's challenge to the district court's jury instructions where the instructions properly stated the necessary elements for conviction).

Second, Robertson's argument that the difference between the disjunctive "or" used in the jury instruction and the conjunctive "and" used in the indictment indicates plain error by the district court is incorrect. The government may charge in the conjunctive and prove in the disjunctive. *United States v. Bonanno*, 852 F.2d 434, 441 (9th Cir. 1988); *United States v. Carter*, 454 F.2d 525, 526 (9th Cir. 1972); *McGriff v. United States*, 408 F.2d 333, 334 (9th Cir. 1969). As we explained in *Bonanno*, "[w]here a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those acts conjunctively charged may establish guilt." 852 F.2d at 441. That is exactly what occurred here. The indictment charged Robertson in the conjunctive, while the jury instruction was written in the disjunctive. Thus, under long-standing practice, the district court did not

plainly err in giving a disjunctive instruction that tracked the language of the statute. *McGriff*, 408 F.2d at 334 (concluding the district court properly instructed the jury in the disjunctive even though the indictment charged violation in the conjunctive).

Finally, although not a direct challenge to the jury instructions, Robertson alleges the government committed "prosecutorial error" by informing the jury it could convict Robertson of embezzling mail solely on a finding that the stolen mail "came into her possession." Robertson contends the government was required to prove both that the mail had been "entrusted to her" and "came into her possession."

We disagree. Even if we did accept Robertson's assertion that the government downplayed the position of trust she occupied as a USPS letter carrier (an assertion belied by the record), as explained above the government needed to prove only that the mail was entrusted to Robertson *or* came into her possession. Thus, to the extent the prosecution focused its case on showing Robertson "came into possession" of the mail she was accused of embezzling, there was no error.

**AFFIRMED.**