**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RENO,
　　　　　　*Petitioner-Appellant*,

v.

RONALD DAVIS, Warden, California
State Prison at San Quentin,
　　　　　　*Respondent-Appellee.*

No. 17-99004

D.C. No.
2:96-cv-02768-
CBM

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted March 22, 2022
Pasadena, California

Filed August 19, 2022

Before: Consuelo M. Callahan, Andrew D. Hurwitz, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Callahan

# SUMMARY[*]

## Habeas Corpus/Death Penalty

The panel affirmed the district court's denial of Reno's amended 28 U.S.C. § 2254 habeas corpus petition challenging his California conviction, on retrial, and death sentence for two first-degree murders and one second-degree murder.

The district court issued a certificate of appealability on two issues: Reno's due process claims regarding the destruction of police records (Claims 17 and 18); and the state trial court's failure to instruct the jury on Cal. Penal Code § 272, which Reno asserted was a lesser included offense of one of the felony charges (Claim 48).

Claims 17 and 18 asserted that the California Supreme Court unreasonably applied clearly established federal law and unreasonably determined the facts when it ruled that the State's destruction of police personnel records before Reno's second trial was not performed in bad faith and did not violate his constitutional rights. The panel held that the California Supreme Court reasonably applied *Arizona v. Youngblood*, 488 U.S. 51 (1988), instead of *Brady v. Maryland*, 373 U.S. 83 (1963), because the record does not support Reno's assertion that the purged records contained material exculpatory evidence. The panel wrote that the California Supreme Court's previous decision in *People v. Memro*, 38 Cal. 3d 658 (1985), did not conclusively resolve this question in his favor. The panel also held that the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

California Supreme Court did not act unreasonably when, applying *Youngblood*, it affirmed the trial court's factual finding that there was no evidence that the police department acted in bad faith.

Claim 48 asserted that the trial court violated Reno's Eighth Amendment rights by failing to sua sponte instruct the jury on lesser included offenses of the felony lewd acts with a minor charge (Cal. Penal Code § 288) which formed the basis of a capital first-degree felony murder count. Specifically, Reno contended that the jury should have been given the option of alternatively finding him guilty of misdemeanor child molestation under Penal Code § 647a, or misdemeanor contributing to the delinquency of a minor under Penal Code § 272. The panel held that the instructions in Reno's case—which did not give the jury "an all-or-nothing choice" between the capital first-degree murder charge and innocence, but rather gave the jury the option of finding Reno guilty of the lesser included non-capital offenses of second-degree murder or voluntary manslaughter—did not run afoul of *Beck v. Alabama*, 447 U.S. 625 (1980), and there was no constitutional error. The panel wrote that Reno failed to identify anything in the California Supreme Court's decision that is inconsistent with the result in *Schad v. Arizona*, 501 U.S. 524 (1991), *abrogated on other grounds as recognized by Edwards v. Vannoy*, 141 S. Ct. 1547, 1554 n.4 (2021), in which the U.S. Supreme Court held that the due process principles underlying *Beck* are satisfied when the jury is given a third, non-capital option between capital murder and acquittal. The panel wrote that Reno's claim fails for this reason alone, but even if it did not, Reno would not be entitled to relief because he did not show that the California Supreme Court unreasonably determined that the court was not required to instruct the jury under §§ 647a or 272.

The panel expanded the certificate of appealability to cover three additional issues.

Claim 2 argued that Reno's confessions to the interrogating officers were coerced and that the trial court's admission of those confessions violated his constitutional rights. The trial court denied Reno's motion to suppress, finding that Reno's statement was "free and voluntary" because "the totality of the circumstances clearly point to the credibility of the prosecution witnesses and against the credibility of the prosecution witnesses and against the credibility of the defense witnesses." The panel held that Reno did not show that the California Supreme Court made an unreasonable determination of fact in finding that that substantial evidence supported the trial court's ruling. Reno also contended that the California Supreme Court unreasonably applied clearly established federal law because the court cited but did not expressly apply the U.S. Supreme Court's opinion in *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), and that the California Supreme Court erred by not comparing his case to *Arizona v. Fulminante*, 499 U.S. 279 (1991), in which the U.S. Supreme Court determined that a confession was coerced when given to a paid FBI informant who promised protection to the defendant from physical attack in prison. Reno asserted that *Fulminante* should have controlled here because the alleged police threats leading to Reno's confession were more immediate and direct than those at issue in *Fulminate*. Noting that a state court decision that fails to cite or show awareness of U.S. Supreme Court cases may still satisfy the deferential standard of review under 28 U.S.C. § 2254(d)(1) so long as neither the reasoning nor the result of the state opinion contradicts clearly established federal law, the panel wrote that the California Supreme Court's decision here did not contradict the reasoning or the results of Reno's cited cases.

Claims 8–10 asserted that Reno's second trial for first-degree felony murder and premeditated and deliberated murder violated the Double Jeopardy Clause and related collateral estoppel doctrines. Holding that these claims lacked merit, the panel wrote that the trial court's finding that the felony-murder special circumstance was not proven during Reno's first trial was not an "acquittal" for double jeopardy purposes. The panel wrote that the California Supreme Court reasonably determined that Reno was never acquitted and reasonably determined that, at most, the ambiguous special circumstance determination foreclosed retrial for the same felony-murder special circumstance. To the extent Reno argued that the California Supreme Court made an unreasonable determination of the facts when it held that the first trial judge might have found Reno guilty of murder under a felony-murder theory, the panel rejected that argument as well.

Claim 62 argued that the trial court violated Reno's constitutional rights by instructing the penalty phase jurors that they must unanimously agree regarding the penalty. Citing *Jones v. United States*, 527 U.S. 373 (1999), the panel held that the California Supreme Court's rejection of this claim was not contrary to, or an unreasonable application of, U.S. Supreme Court precedent, especially in the absence of any evidence that jurors were confused by the instruction. As to Reno's argument that the California Supreme Court unreasonably determined that the instruction was consistent with state law, the panel wrote that the California Supreme Court's interpretation of California's 1977 death penalty statute binds this court on federal review.

**COUNSEL**

James S. Thomson (argued) and Ethan H. Stone, Berkeley, California, for Petitioner-Appellant.

David Fredric Glassman (argued), Mary Sanchez, and A. Scott Hayward, Deputy Attorneys General; Dana M. Ali, Supervising Deputy Attorney General; James William Bilderback II, Senior Assistant Attorney General; Lance E. Winters, Chief Assistant Attorney General; Rob Bonta, Attorney General; Office of the Attorney General, Los Angeles, California; for Respondent-Appellee.

**OPINION**

CALLAHAN, Circuit Judge:

In 1979, Petitioner Reno[1] was found guilty of the murders of three young boys and sentenced to death. The California Supreme Court reversed Reno's conviction and remanded for a new trial. *See People v. Memro* ("*Memro I*"), 38 Cal. 3d 658 (1985). In a 1987 retrial, a jury found Reno guilty of two first-degree murders and one second-degree murder. Following a penalty trial, the jury returned a verdict of death. The California Supreme Court upheld the convictions and sentence on direct appeal. *People v. Memro* ("*Memro II*"), 11 Cal. 4th 786 (1995).

After unsuccessfully seeking state habeas relief, *In re Reno*, 55 Cal. 4th 428 (2012), Reno filed a 28 U.S.C. § 2254

---

[1] Reno was formerly known as Harold Ray Memro prior to changing his name in 1994. *In re Reno*, 55 Cal. 4th 428, 443 n.2 (2012), *as modified on denial of reh'g* (Oct. 31, 2012).

petition for habeas corpus. The district court denied his petition but granted a certificate of appealability as to two issues. *Reno v. Davis*, No. CV 96-2768 CBM, 2017 WL 4863071 (C.D. Cal. Aug. 15, 2017). We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). We expand the district court's certificate of appealability to cover three additional issues, and applying the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), affirm the district court's denial of Reno's petition.

## I

Unless otherwise noted, the following facts are drawn from the California Supreme Court's opinion on direct appeal following Reno's second trial. *Memro II*, 11 Cal. 4th 786.

## A

Seven-year-old Carl Carter, Jr. ("Carl")[2] was reported missing on October 22, 1978. *Memro II*, 11 Cal. 4th at 811–12. Officers investigating Carl's disappearance "became aware of [Reno] when they were interviewing individuals who might have information regarding [Carl's] whereabouts." *Id.* at 811. When the police went to Reno's apartment to ask him questions, Reno answered the door and said, "I knew you were coming . . . . I['v]e been in Atascadero [State Prison]." *Id.* at 812 (omissions and alterations in original). Reno provided no helpful information and the police left, returning to Carl's home. *Id.*

---

[2] We use Carl's first name to avoid any confusion with investigating officer and trial witness Lloyd Carter.

Soon after, Reno arrived at Carl's home while the police were still there to drop off a car part with Carl's father, a mechanic who was working on Reno's vehicle. *Id*. Officer William Sims further questioned Reno about his whereabouts the night Carl disappeared, and Reno revealed he had been to Carl's home on that night. *Id*. Officer Sims testified that Reno recalled stopping by the house to talk to Carl's father about working on his car. *Id.* Reno also told Officer Sims that while at the house, he saw Carl, and the two "had a short conversation" before Reno took Carl to get a soft drink. *Id*. Officer Sims then arrested Reno for kidnapping. *Id*.

That evening, Officers Sims, Lloyd Carter, Louie Gluhak, and Dennis Greene interrogated Reno at the jail. *Id*. Officer Carter took notes, but, at Reno's insistence, the interrogations were not otherwise recorded. *Id*.

Officer Carter testified that during one of these interrogations Reno admitted to taking Carl back to Reno's apartment for a soft drink. *Id*. During the interrogation, Reno further admitted that he also planned to take nude pictures of Carl, and that he took Carl into his bedroom and fascinated him with strobe lights. *Id*. at 812–13. But soon after, Carl said he wanted to leave, which enraged Reno. *Id*. at 813. Reno claimed he responded by strangling Carl with a clothesline, taking off his and Carl's clothes except for Carl's shirt, taping Carl's hands behind his back, and attempting anal intercourse with his dead body. *Id*.

Knowing he needed an alibi, Reno called Carl's father to see if Carl's father would fix his vehicle. *Id.* Reno then arranged to have a friend drive with him to Carl's home to drop off his car. *Id*. Reno admitted to returning to his apartment, wrapping Carl's body and clothes in a blanket,

forgetting Carl's shoes and socks, and dumping the body and blanket over the side of a rural road. *Id*.

After confessing, Reno led the police to Carl's body, which was "clad in underwear" with the clothesline still around his neck (tied in a square knot as Reno had described). *Id*. at 814. Officer Carter testified that he and other officers searched Reno's apartment with Reno's permission and found a red suitcase under a workbench with a small boy's shoes and socks, in the same place that Reno had described leaving Carl's footwear. *Id*. Officers found boy's clothing and a length of clothesline resembling the line tied around Carl's neck. *Id*. They also found sexually explicit magazines featuring young men and boys, and hundreds of photographs of young boys without clothes. *Id*. Some of the photographs were of other neighborhood children. *Id*.

At Reno's second trial, the coroner's representative, Dr. Joseph Choi, testified that Carl's cause of death was strangulation by a rope, and that an anal swab was negative for spermatozoa, but showed a positive acid phosphatase result indicating "the presence of seminal fluid that came from the prostate gland of someone other than [Carl]." *Id*. at 815.

**B**

After Reno confessed to murdering Carl, Officer Carter "testified that he invited [Reno] to confess to any other crimes he might have committed." *Id*. at 813. Reno replied that about two years before, he had ridden his motorcycle to a park hoping to take pictures of young boys. *Id*. at 813. Near dusk, he saw two boys, 12-year-old Scott Fowler and 10-year-old Ralph Chavez, walking toward a pond with fishing poles and sack lunches. *Id*. at 813–14. He talked to

them, took some pictures, and was entertaining the idea of sexual contact with Fowler as Chavez fell asleep by the pond.  *Id*.  Reno convinced Fowler to walk to the other side of the pond, and when they got there Fowler "said something about fucking faggots."  *Id.* at 814.  Reno became enraged and then cut the boy's throat.  *Id*.  The noise of the attack awoke Chavez and he began to run, but Reno caught him and cut his throat as well.  *Id*.  Reno discarded the knife the next day.  *Id*.

The day after he confessed to Officer Carter, Reno repeated his confession to Officer Donald Barclift and added some details of the Fowler and Chavez murders.  *Id*. at 814–15.  Officer Barclift testified that Reno informed him that when he was talking to the boys, he had cut off the top of the boys' empty milk jug but kept the handle intact so they could use it to hold their catch.  *Id*. at 811, 815.  A milk jug cut in that manner was found at the murder scene.  *Id.* at 811.  Reno specifically described how he had cut the jug to leave the handle intact, and chided the police for not recovering any evidence from the jug because he believed his fingerprints were all over it.  *Id*. at 815.  Officer Barclift testified that only the killer could have known precisely how the milk jug was cut so as to leave the handle intact.  *Id*.  Dr. Choi from the coroner's office testified at trial that Fowler and Chavez both died from cutting wounds to the neck, consistent with Reno's confession.  *Id*.

## C

In October 1978, the State charged Reno by information with three counts of murder for Fowler, Chavez, and Carl.  *Memro I*, 38 Cal. 3d at 665.  The information also alleged multiple-murder and felony-murder (based on felony lewd or lascivious conduct with Carl) special circumstances (former California Penal Code section 190.2(c)(3)(iv),

(c)(5)). *Id.* Reno waived his right to a jury trial for the guilt and penalty phases. *Id.* at 666. The trial judge found him guilty of the first-degree murders of Carl and Chavez, the second-degree murder of Fowler, and found the multiple-murder special circumstance allegation true, but found the felony-murder special circumstance allegation not true. *Id.* The trial court sentenced Reno to death for Carl's murder, and to life and a term of years for the murders of Chavez and Fowler, respectively. *Id.*

On appeal, the California Supreme Court determined that the trial court had erred in summarily denying a motion filed by Reno to discover information regarding complaints against various police officers, including those who had interrogated him. *Id.* at 673–84. "The purpose of such information, it was alleged, was to enable [Reno] to bolster his claim that his confession had been coerced." *Id.* at 674. In support of this discovery request, Reno's counsel provided statements by various individuals who had similarly alleged "brutality and intimidation" by officers in the police department during recent interrogations. *Id.* Finding it "reasonably probable that discovery would have led to admissible evidence of sufficient weight to affect the trial court's determination on the voluntariness of the confession," *id.* at 685, the California Supreme Court reversed and remanded the guilt, special circumstance, and penalty determinations for a new trial, *id.* at 705. Anticipating double jeopardy challenges to retrial on the charge of murdering Carl, the California Supreme Court additionally held that the trial court's rejection of the felony-murder special circumstance did not bar retrial for Carl's murder, and that sufficient evidence existed for a conviction under a felony-murder theory. *Id.* at 690–700.

On remand, the trial judge granted Reno's motion to discover the personnel records of the four police officers who had interrogated him. *Memro II*, 11 Cal. 4th at 829. However, the State responded that the officers' records had been purged in July 1984, and as a result could not be produced. *Id.* at 829–30. Reno then moved to dismiss the case as a sanction for failing to preserve the records. *Id.* The prosecution offered testimony about what the records contained, with each of the officers testifying that they had not received any personnel complaints "except for Officer Sims, who described one 'unfounded' complaint in 1978 involving asserted use of excessive force during an arrest." *Id.* at 830. After a hearing, the trial court denied Reno's motion, concluding that the evidence did not support a finding that the records had been destroyed in bad faith. *Id.* at 830.

The case proceeded to trial a second time. A jury found Reno guilty of the first-degree murders of Carl and Chavez and the second-degree murder of Fowler, and found the multiple-murder special circumstance true. *Id.* at 811. After a penalty trial, the jury returned a verdict of death. *Id*. In 1995, the California Supreme Court affirmed. *Id*. The United States Supreme Court denied a petition for writ of certiorari. *Memro v. California*, 519 U.S. 834 (1996).

Also in 1995, Reno filed his initial state habeas petition raising twelve claims in the California Supreme Court. The California Supreme Court summarily denied the petition on the merits that same year. *In re Reno*, 55 Cal. 4th at 447.

In 1998, Reno filed a 28 U.S.C. § 2254 petition in the Central District of California. In 1999, the district court stayed the proceedings so that Reno could exhaust certain of his claims in a second state petition. *Reno*, 2017 WL 4863071, at *2.

In 2004, following appointment of new counsel, Reno filed a second petition in the California Supreme Court raising 143 claims and spanning over 500 pages. *In re Reno*, 55 Cal. 4th at 448. In 2012, the California Supreme Court dismissed most of the claims in the second state petition on various procedural grounds, and denied the remainder on the merits.[3] *Id*. at 457–59, 523. The United States Supreme Court denied a petition for writ of certiorari. *Reno v. California*, 569 U.S. 978 (2013).

In 2007, Reno filed the operative amended § 2254 petition in the district court. *Reno*, 2017 WL 4863071, at *2. The district court denied multiple claims on the merits and dismissed the remaining claims as procedurally defaulted. The district court issued a certificate of appealability on two issues: Reno's due process claims regarding the destruction of police records (Claims 17 and 18); and the state trial court's failure to instruct the jury on California Penal Code section 272, which Reno asserts was a lesser included offense of one of the felony charges (Claim 48). Reno timely appealed.

## II

We review the district court's denial of a habeas petition de novo. *Dixon v. Shinn*, 33 F.4th 1050, 1053 (9th Cir. 2022). Reno's federal petition was filed after April 24, 1996, and therefore the terms of AEDPA govern our review.

---

[3] The California Supreme Court also determined that the lengthy petition was an example of an abusive writ practice. 55 Cal. 4th at 456–59. As a result, the California Supreme Court set new guidelines and limits on exhaustion petitions, including page limits and requirements for streamlining the pleading process. *Id.* at 443–44.

*Woodford v. Garceau*, 538 U.S. 202, 210 (2003).  Under AEDPA, habeas relief may not be granted

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[E]ven a strong case for relief does not mean the state court's" denial was unreasonable. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  To obtain relief on a claim in federal court, a petitioner bears the burden to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III

Claims 17 and 18 of Reno's amended § 2254 petition assert that the California Supreme Court unreasonably applied clearly established federal law and unreasonably determined the facts when it ruled that the State's destruction of police personnel records before his second trial was not performed in bad faith and did not violate his constitutional

rights. The district court held that Reno failed to establish that the California Supreme Court unreasonably applied *Arizona v. Youngblood*, 488 U.S. 51 (1988), and that the state court's determination that the records were not destroyed in bad faith was reasonable, but granted a certificate of appealability as to these claims. *Reno*, 2017 WL 4863071, at \*19, \*59. We affirm the denial of these claims.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Subsequently, in *Youngblood* the Court distinguished *Brady* in a situation where the evidence that was destroyed was only potentially favorable to the defense. 488 U.S. at 57–58. In this scenario, "[t]he government's failure to preserve potentially exculpatory evidence rises to the level of a due process violation only if the defendant shows that the government acted in bad faith." *United States v. Robertson*, 895 F.3d 1206, 1211 (9th Cir. 2018) (citing *Youngblood*, 488 U.S. at 58).

Reno principally raises two arguments. First, he contends that the California Supreme Court unreasonably relied on the standards set forth in *Youngblood* instead of *Brady*. He claims the destroyed records constituted "material exculpatory evidence that would have demonstrated the coerced and unreliable character of his alleged confession." He also cites the California Supreme Court's statement in *Memro I* that the trial court's initial denial of his motion for discovery caused him "clear" prejudice as support for the proposition that the destroyed

records contained favorable evidence. *See Memro I*, 38 Cal. 3d at 684.

Alternatively, Reno argues that even if *Youngblood* applies, the California Supreme Court unreasonably held that substantial evidence supported the trial court's determination that the police department did not destroy the records in bad faith. *See Memro II*, 11 Cal. 4th at 831. Reno asserts that the destruction of records was inherently suspicious because the chief of the police department (1) was aware of allegations of misconduct against the officers in his department, and (2) ordered the records destroyed about two months after oral argument was held on Reno's first appeal, a primary focus of which was the trial court's denial of his motion to discover these records. Reno also asserts that the police department did not appear to have a policy of regularly purging records prior to this incident. Additionally, Reno cites a news article written during Reno's first trial—which was not part of the record on his direct appeal—establishing that the police chief was aware of Reno's misconduct allegations at the time he ordered the destruction of the records.

We are not persuaded by these arguments. The California Supreme Court's application of *Youngblood* was reasonable because the record does not support Reno's assertion that the purged personnel records contained material exculpatory evidence. *Memro II*, 11 Cal. 4th at 831.[4]  The state court's determination that the records

---

[4] The State contends that because Reno submitted a new piece of evidence with his first habeas petition—the 1979 newspaper article referenced above—Reno's state habeas claim on this point was different from the claim as presented to the California Supreme Court on direct appeal. Thus, the State argues the relevant opinion for the purpose of

contained, at most, "potentially useful" evidence was supported by the statements of the four interrogating detectives who testified that their personnel files before the purge contained no formal complaints or investigations for excessive use of force allegations, except for Officer Sims who testified that the sole complaint in his file was "unfounded." *See id.* There was no contrary evidence in the record about the existence of complaints and investigations. Because the records were destroyed and the testimony indicated that the records did not contain evidence favorable to Reno, the California Supreme Court reasonably applied *Youngblood* instead of *Brady*.

Contrary to Reno's argument, the California Supreme Court's previous decision in *Memro I* did not conclusively resolve this question in his favor. The court in *Memro I* discussed the "materiality" of the evidence sought by Reno in the context of his discovery motion and the court's analysis of whether the records might be admissible or might lead to admissible evidence relevant to his claims of

---

AEDPA review is the California Supreme Court's summary habeas denial, not the California Supreme Court's opinion on direct appeal (*Memro II*). As a result, the State argues we should apply the deferential standard articulated in *Richter* applicable to summary denials, which requires Reno to demonstrate that "there was no reasonable basis for the state court to deny relief." 562 U.S. at 98. Reno counters that we should evaluate the reasoning in *Memro II* because the State fails to rebut the presumption that where there is a reasoned state judgment denying a claim followed by a later summary denial of the same claim, the summary denial rests on the same grounds as explained in the earlier judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended on denial of reh'g*, 733 F.3d 794 (9th Cir. 2013). We need not resolve this question here because we find that the California Supreme Court's decision in *Memro II* did not unreasonably apply clearly established federal law or make an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1)–(2).

coercion. *Memro I*, 38 Cal. 3d at 682–83, 685 (concluding that it was "reasonably probable that discovery *would have led to admissible evidence* of sufficient weight to affect the trial court's determination on the voluntariness of the confession" (emphasis added)). But the court's conclusion that the motion *might* have led to the discovery of favorable admissible evidence is not the same as a conclusion that that the records themselves necessarily contained "material exculpatory evidence." *See Youngblood*, 488 U.S. at 57. Indeed, the court expressly stated that Reno "was not in a position to know" whether the files contained any useful information. *Memro I*, 38 Cal. 3d at 684.

The California Supreme Court did not act unreasonably when, applying *Youngblood*, it affirmed the trial court's factual finding that there was no evidence that the police department acted in bad faith. *See Memro II*, 11 Cal. 4th at 829–32; 28 U.S.C. § 2254(d)(2). While there was a temporal proximity between the oral argument in Reno's first direct appeal (in May 1984) and the police chief's order to purge the records about two months later (in July 1984), the trial court concluded that (1) the records were destroyed in accordance with the California Government Code (specifically, section 34090(d)) and were kept for longer than the Code required, and (2) the police department, "unschooled in the nuances of appellate procedure," did not realize the records might be needed after the trial court had originally denied discovery regarding them. *Id.* at 830–31. These findings were made following an evidentiary hearing and were supported by the testimony of the officers whose records were at issue and the police department's current and former custodians of records. *Id.* at 829–30. It was not unreasonable for the California Supreme Court to hold that the record adequately supported the trial court's conclusion. *See, e.g.*, *Briggs v. Grounds*, 682 F.3d 1165, 1170 (9th Cir.

2012) ("[U]nless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial evidence, we must uphold it.").

Further, the 1979 news article does not convince us that the California Supreme Court's factual determinations were unreasonable. The article does not establish that the police chief or anyone else employed by the police department who participated in the document purge five years later were aware that these allegations were still a live issue or that there was a possibility that the trial judge's order would be overturned regarding these documents. Indeed, the police chief's comments in the article indicated that he was not aware of any complaints regarding the officers that could have supported Reno's allegations.

For these reasons, we hold that the California Supreme Court's rulings were not based on an unreasonable application of *Youngblood* or an unreasonable determination of the facts, and we affirm the district court's denial of Claims 17 and 18. *See* 28 U.S.C. § 2254(d)(1) & (2).

**IV**

Claim 48 of Reno's amended § 2254 petition asserts that the trial court violated his Eighth Amendment rights by failing to sua sponte instruct the jury on lesser included offenses of the felony lewd acts with a minor charge (California Penal Code section 288) which formed the basis of the capital first-degree felony murder count regarding Carl. Specifically, Reno contends that the jury should have been given the option of alternatively finding him guilty of misdemeanor child molestation under Penal Code section 647a, or misdemeanor contributing to the delinquency of a minor under Penal Code section 272. The

district court denied the claim but granted a certificate of appealability. *Reno*, 2017 WL 4863071, at \*37, \*59.[5] We affirm.

In *Beck*, the Supreme Court held that a defendant in a capital case has a constitutional right to jury instructions on a lesser included offense in certain instances to protect against "the risk of an unwarranted conviction." *Beck v. Alabama*, 447 U.S. 625, 637 (1980) ("Such a risk cannot be tolerated in a case in which the defendant's life is at stake."). The Court determined that "when a jury is given only two options, 'not guilty' and 'guilty of capital murder,' [but] the evidence would support an instruction on a lesser included offense, [because] the risk that the jury will convict although it has reasonable doubt is too great," a third option is required; an instruction on a lesser included, non-capital offense. *Solis v. Garcia*, 219 F.3d 922, 928 (9th Cir. 2000) (citing *Beck*, 447 U.S. at 638). In *Schad*, the Court clarified that, even in capital cases, a defendant is not entitled to jury instructions on every lesser included offense that the evidence supports. *Schad v. Arizona*, 501 U.S. 624, 645–47 (1991) (plurality opinion), *abrogated on other grounds as recognized by Edwards v. Vannoy*, 141 S. Ct. 1547, 1556 n.4 (2021). Instead, "the due process principles underlying *Beck*" are satisfied when the jury is given a third, non-capital option between capital murder and acquittal. *Id*. at 646–47; *see also Turner v. Calderon,* 281 F.3d 851, 886 (9th Cir. 2002). The Court reiterated that, in *Beck*, the jury was

---

[5] The parties dispute whether the district court's grant of a certificate of appealability encompassed only the section 272 allegation, or also included the section 647a allegation. To the extent the district court's order is ambiguous on this point, we expand the certificate of appealability to include Reno's allegations under both statutes. *See* 28 U.S.C. § 2253(c).

presented with an "all-or-nothing" decision. *Schad*, 501 U.S. at 646.

The jury in Reno's case was not given "an all-or-nothing choice" between the capital first-degree murder charge and innocence. *Schad*, 501 U.S. at 647. Instead, it was instructed that it had the option of finding Reno guilty of the lesser included non-capital offenses of second-degree murder or voluntary manslaughter. Thus, the jury instructions in this case did not run afoul of *Beck* and there was no constitutional error. *See Turner*, 281 F.3d at 885–86.

Reno argues that the California Supreme Court did not cite or discuss *Schad* and that the state court's rejection of his claim on the ground that Reno was not entitled to instructions on sections 647a or 272 contradicts *Schad*'s reasoning. We disagree. Although the California Supreme Court did not expressly discuss *Schad*, Reno fails to identify anything in *Memro II* that is inconsistent with the result in *Schad*. *See Johnson v. Williams*, 568 U.S. 289, 298 (2013) (where a state court rejects a federal claim without expressly discussing the claim, a rebuttable presumption exists that the court considered and adjudicated it on the merits); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (a state court can reasonably apply federal law without explicitly relying on U.S. Supreme Court cases so long as "neither the reasoning nor the result of the state-court decision contradicts them").

Reno's claim fails for this reason alone. But even if it did not, Reno still would not be entitled to relief because he has not shown that the California Supreme Court unreasonably determined that the court was not required to instruct the jury under sections 647a or 272.

First, the California Supreme Court reasonably determined the evidence supported the instruction of lewd

conduct and contact under section 288, but that it did not support instruction for only lewd conduct under section 647a. Under California law, a "defendant is entitled to an instruction on a lesser included offense only if 'there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense' *but not the lesser*." *Memro II*, 11 Cal. 4th at 871 (alteration in original) (citations omitted) (quoting *People v. Morrison*, 228 Cal. App. 2d 707, 712 (1964)). At the time Reno killed Carl, section 647a criminalized as a misdemeanor offense "[e]very person who annoys or molests any child under the age of 18." *Id.* at 870. "The primary distinction between section 288" and section 647a is that section 288 requires actual or constructive lewd touching, while section 647a does not. *Id.* at 871. Thus, to be entitled to a section 647a instruction, Reno was required to establish that there was evidence that Reno engaged in lewd conduct with Carl but "without a lewd touching." *Id.* at 872.

The California Supreme Court reasonably held that there was no such evidence. *Id.* Reno "confessed that he brought [Carl] to his apartment intending to take nude pictures of him," and admitted to disrobing Carl. *Id.* at 871–72. The California Supreme Court reasonably concluded that Reno's "disrobing [of Carl] while alive, actual or constructive, if accepted by the trier of fact, establishes a violation of section 288," *id.* at 872, and thus Reno was not entitled to an instruction as to the lesser offense under section 647a. *See Morrison*, 228 Cal. App. 2d at 712; *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Nor was Reno entitled to an instruction under section 272. The California Supreme Court determined as matter of state law that section 272 was not a lesser included offense of performing a lewd and lascivious act under section 288. *Memro II*, 11 Cal. 4th at 872–73. That reasoning is binding on federal habeas review. *See Richey*, 546 U.S. at 76.

Reno argues that the California Supreme Court erred because it had determined in 1947 that section 272 was a lesser included offense to section 288. *People v. Greer*, 30 Cal. 2d 589, 596–98 (1947). By contrast, the case *Memro II* cited for the proposition that section 272 was *not* a lesser included offense was decided in 1992, five years after Reno's retrial. *Memro II*, 11 Cal. 4th at 872–73 (citing *People v. Vincze*, 8 Cal. App. 4th 1159, 1162–64 (1992)). But the 1992 decision in *Vincze* held that the prior result in *Greer* was based on text in the statute that had been removed by amendment in 1975, before Reno killed Carl. *Vincze*, 8 Cal. App. 4th at 1162–63. With the relevant text removed from the statute, the California Court of Appeal determined that section 272 no longer described a lesser included offense in relation to section 288. *Id*. This was the precise reasoning apparently adopted by the California Supreme Court in *Memro II*, which—as noted above—is binding on federal habeas review. *Richey*, 546 U.S. at 76.

For these reasons, we affirm the district court's denial of Claim 48. *See Richter*, 562 U.S. at 102–03; 28 U.S.C. § 2254(d)(1)–(2).

## V

Reno's appeal also raises several uncertified issues. We construe a habeas appellant's briefing of uncertified issues as a motion to expand the district court's grant of a certificate of appealability. *Floyd v. Filson*, 949 F.3d 1128, 1152 (9th

Cir. 2020); 9th Cir. R. 22-1(e).  To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right."    28 U.S.C. § 2253(c)(2).  This requires the petitioner to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; *or* that the questions are adequate to deserve encouragement to proceed further."  *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (alteration in original) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Reno's brief raises five uncertified issues for consideration.  We find that three of these issues—raising arguments related to Claim 2, Claims 8–10, and Claim 62— warrant further consideration and therefore grant a certificate of appealability regarding these claims.  *See Lambright*, 220 F.3d at 1025.  However, we agree with the district court that Reno's contentions on these issues lack merit.   We deny Reno's request for a certificate of appealability on his remaining claims.[6]    28 U.S.C. § 2253(c)(2); *see also Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012).

## A

Claim 2 of Reno's amended § 2254 petition argues that his confessions to the interrogating officers were coerced and that the trial court's admission of those confessions violated his constitutional rights.  The district court rejected the claim, *Reno*, 2017 WL 4863071, at *25.  We affirm.

---

[6] Specifically, we deny Reno's request for a certificate of appealability on Claims 5, 11–14, 22–23, 34–37, 42–46, 50–55, 64, 69, 71, 72, 74–79, 82–111, 113–120, 124, 126, 140, and 142.

The admission of an involuntary or coerced confession violates a defendant's right to due process under the Fourteenth Amendment. *Jackson v. Denno*, 378 U.S. 368, 385–86 (1964). A confession is involuntary if a defendant's "will was overborne" or if the confession was not "the product of a rational intellect and a free will." *Townsend v. Sain*, 372 U.S. 293, 307 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superseded in part by statute*, 28 U.S.C. § 2254(e)(2) (1996). When determining whether a defendant's will was overborne, evidence of "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

"Whether a confession is involuntary must be analyzed within the 'totality of [the] circumstances.'" *Cook v. Kernan*, 948 F.3d 952, 968 (9th Cir. 2020) (alteration in original) (quoting *Withrow v. Williams*, 507 U.S. 680, 693 (1993)). "The factors to be considered include the degree of police coercion; the length, location and continuity of the interrogation; and the defendant's maturity, education, physical condition, mental health, and age." *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011). This "is a fact-based analysis that inherently allows for a wide range of reasonable application," and because the general standard requires a case-by-case analysis, "federal courts must provide even 'more leeway' under AEDPA in 'evaluating whether a rule application was unreasonable.'" *Cook*, 948 F.3d at 969 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Reno presented evidence to the trial court in support of his contention that his confession was involuntary, which

was summarized by the California Supreme Court on direct appeal and which we only briefly recount here. *Memro II*, 11 Cal. 4th at 823–26.

During a hearing on his motion to suppress, Reno testified that, on the night he was arrested, the officers did not read him his *Miranda* rights and that they initially refused to let him make a phone call (though they allowed him to make calls later) or talk to a lawyer. *Id.* at 824–26. Reno asserted that, during his third interrogation that evening, the officers used the physically imposing size of one of the officers—Officer Greene—to intimidate him. *Id.* at 823. Reno stated that the officers pointed to a depression in the wall of the interrogation room and claimed that they would use Reno's head to enlarge the depression unless he admitted to murdering Carl. *Id.* Reno also claimed the officers told him that if he were imprisoned for the murder, he would be unlikely to survive. *Id.* Reno further testified that the officers promised him that if he confessed, no charges would be filed and that he would be returned to Atascadero. *Id.* at 824.

Reno introduced testimony from other individuals, including Angelina Nasca and Michael Bridges, who allegedly had been mistreated by Officer Greene while under arrest. *Id.* at 823. Nasca claimed that Officer Greene threatened to push her head into the depression in the interrogation room wall, which was similar to the threat Reno allegedly received. *Id.* Bridges testified that Officer Greene threatened him with a gun and beat him. *Id.* Reno's counsel, Michael Carney, further testified that Officer Greene had told Carney that Greene had broken another citizen's jaw while on duty. *Id.* Additionally, Reno presented testimony "that for three or four years the local public defender had not received a single request to appear

at the South Gate jail in response to an invocation of the right to counsel." *Id.* at 824.

The prosecution produced its own witnesses and testimony in support of its position that the confession was voluntary. Officer Sims testified that he had read Reno his *Miranda* rights and that Reno waived them. Officers Sims and Carter both testified that Reno was never threatened or induced to confess. *Id.* at 824. The officers testified that Officer Greene had not acted in a threatening or intimidating manner. *Id.* Officer Carter testified that Reno was "extremely emotionally upset and . . . seemed to be very remorseful" as Reno confessed to the murders. *Id.* at 824–25. The State noted that Reno conceded he had never been physically harmed. *Id.* at 825. Another officer testified that, after Reno guided police to Carl's body, Reno told the officer that he "didn't understand how anyone could treat him so fairly and so nice when he had done such a terrible thing." *Id.* The trial court ultimately denied Reno's motion to suppress, finding that his statement was "free and voluntary" because "the totality of the circumstances clearly point to the credibility of the prosecution witnesses and against the credibility of the defense witnesses." *Id.* at 826.

Reno has not shown that the California Supreme Court made an unreasonable determination of fact in finding that substantial evidence supported the trial court's ruling. *Id.* at 826–27; 28 U.S.C. § 2254(d)(2). The trial court ruled on the credibility of the various witnesses after holding a full evidentiary hearing and giving Reno the opportunity to develop the record.[7] Although the record contained

---

[7] Reno also argues that the first trial court prevented him from gathering more evidence of coercion because the court denied an ex parte motion for an unannounced visit to the interrogation room to get a picture

evidence supporting Reno's assertions, the California Supreme Court reasonably determined that substantial evidence supported the trial court's credibility findings. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Reno also contends that the California Supreme Court unreasonably applied clearly established federal law under § 2254(d)(1) because the court cited but did not expressly apply the U.S. Supreme Court's opinion in *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Reno further argues that the California Supreme Court erred by not comparing his case to *Arizona v. Fulminante*, in which the U.S. Supreme Court determined that a confession was coerced when given to a paid FBI informant who promised protection to the defendant from physical attack in prison. 499 U.S. 279, 287–88 (1991). Reno asserts that *Fulminante* should have controlled here because the alleged police threats leading to Reno's confession were more immediate and direct than those at issue in *Fulminante*.

We are not persuaded. A state court decision that fails to cite or show awareness of U.S. Supreme Court cases may still satisfy the deferential standard of review under § 2254(d)(1) so long as neither the reasoning nor the result

of the dent or hole in the wall. However, any evidence that he could have garnered from the visit would have been cumulative to Officer Carter's admission that there was a dent or indentation in the wall as the witnesses described at that time. Moreover, Officer Sims testified that soon after Reno's interrogation the room was renovated and converted for another use. The denial of this motion did not render the state court's ultimate factual findings unreasonable.

of the state opinion contradicts clearly established federal law. *Early*, 537 U.S. at 8. The California Supreme Court's decision did not contradict the reasoning or the results of Reno's cited cases. The existence of "coercive police activity is a necessary predicate" to a finding that a confession was not voluntary, *Connelly*, 479 U.S. at 167. Here, the California Supreme Court reasonably found that the police did not act in a coercive manner as alleged by Reno. *See Memro II*, 11 Cal. 4th at 827. Absent this "necessary predicate" of coercive police conduct, the California Supreme Court had no reason to proceed further in the analysis set forth in *Schneckloth* and *Fulminante*. *Fulminante*, 499 U.S. at 285–87; *Schneckloth*, 412 U.S. at 227; *see also Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (where the pre-confession "questioning was of short duration" and the accused is a "mature individual of normal intelligence," even subtle forms of police coercion such as misrepresenting evidence are "insufficient in our view to make this otherwise voluntary confession inadmissible").

For these reasons, we affirm the district court's denial of Claim 2.

## B

Claims 8–10 of Reno's amended § 2254 petition assert that his second trial for first-degree felony murder and premeditated and deliberated murder violated the Double Jeopardy Clause and related collateral estoppel doctrines. We agree with the district court that these claims lack merit. *See Reno*, 2017 WL 4863071, at *33.

The Double Jeopardy Clause of the Fifth Amendment precludes the State from (1) bringing a successive prosecution on the same offense for which a defendant was previously acquitted, *Brown v. Ohio*, 432 U.S. 161, 165–66

(1977), and (2) relitigating any issue that was necessarily decided in the defendant's favor in a prior trial under the collateral estoppel rule, *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). The protection of the Double Jeopardy Clause "applies only if there has been an event, such as an acquittal, which terminates the original jeopardy." *Richardson v. United States*, 468 U.S. 317, 325 (1984). "[T]he Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988). "[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case." *Burks v. United States*, 437 U.S. 1, 15 (1978).

Reno's arguments stem from a specific finding of the trial judge at his first trial. At that trial, Reno was found guilty of first-degree murder for killing Carl. *Memro II*, 11 Cal. 4th at 820. The court further "found true a special circumstance of multiple murder under [California's] 1977 death penalty statute." *Id.* But the court "found not true a special circumstance of felony murder under the same law." *Id.* Under California's 1977 death penalty law, the felony-murder special circumstance required a finding that both (1) the murder was committed in the course of committing one of several enumerated felonies (including lewd or lascivious acts against a minor under California Penal Code section 288), *and* (2) the murder was willful, deliberate, and premeditated. *Id.* at 820; *Memro I*, 38 Cal. 3d 658, 696.

However, the trial court did not specify which of these two elements the State had failed to prove. As the California Supreme Court later summarized:

> By finding the special circumstance not true, the [trial] court may have decided that there was no premeditation, or that there was no attempted or completed lewd act—we do not know. It could not have decided that both theories failed, however, because at the same time, by finding defendant guilty of first degree murder, it determined either that defendant killed [Carl] with premeditation and deliberation, or while committing or attempting to commit a violation of section 288.

*Memro II*, 11 Cal. 4th at 820. Indeed, in Reno's direct appeal following his initial conviction, the California Supreme Court concluded that sufficient evidence supported the conviction for the first-degree murder of Carl under a felony-murder theory. *Memro I*, 38 Cal. 3d at 690–99.

At Reno's retrial, the prosecution did not reallege the felony-murder special circumstance which the first trial judge had rejected, and instead presented the case regarding Carl's killing both under felony-murder and premeditated and deliberated theories. *Memro II*, 11 Cal. 4th at 820. The jury was instructed on both theories and found Reno guilty of first-degree murder. *Id*. The trial court denied Reno's request to poll the jurors regarding the legal basis for each vote. *Id*.

Following the second trial, Reno argued to the California Supreme Court—as he does now—that double jeopardy and collateral estoppel principles barred his retrial under either

the felony-murder or the premeditated and deliberated theories. *Id*. at 820–22. Reno "premise[d] this contention on an argument that the court must have rejected one of those theories when it found the felony-murder special circumstance not true, and therefore he should not have been retried on either theory." *Id.* at 820–21. The California Supreme Court rejected Reno's argument, finding that double jeopardy did not apply because Reno was convicted, not acquitted, in the first trial for the first-degree murder of Carl. *Id*. at 821. Further, the state court found that the doctrine of collateral estoppel would "at most . . . bar retrial of the felony-murder special circumstance, which was not realleged" at his second trial. *Id.* at 822.

Reno contends that the California Supreme Court's rejection of his argument was an unreasonable application of clearly established federal law. We disagree. The trial court's finding that the felony-murder special circumstance was not proven during Reno's first trial was not an "acquittal" for double jeopardy purposes. On the contrary, the trial court found Reno guilty of the first-degree murder of Carl, and the California Supreme Court expressly determined that sufficient evidence supported the conviction under a felony-murder theory. *Memro I*, 38 Cal. 3d at 699. Further, the California Supreme Court determined that sufficient evidence supported the murder convictions for Fowler and Chavez, which in turn supported the multiple-murder special circumstance which made Reno's case death eligible. *Memro I*, 38 Cal. 3d at 690–700. The California Supreme Court thus reasonably determined that Reno was never acquitted. *See Poland v. Arizona*, 476 U.S. 147, 157 (1986) (holding the defendant was not "acquitted" for double jeopardy purposes where the state court found insufficient evidence to support an aggravating circumstance but still imposed the death penalty).

The California Supreme Court also reasonably determined that, at most, the ambiguous special circumstance determination foreclosed retrial for the same felony-murder special circumstance. *See Memro II*, 11 Cal. 4th at 821–22. "If 'there is more than one rational conclusion that can be drawn from the first jury's verdict,' then collateral estoppel cannot apply because the issue was not necessarily decided by the jury's verdict." *Sivak v. Hardison*, 658 F.3d 898, 919 (9th Cir. 2011) (quoting *Santamaria v. Horsley*, 133 F.3d 1242, 1246 (9th Cir. 1998) (en banc)). Because the judge in Reno's first trial and the jury in Reno's retrial could have rationally grounded the first-degree murder verdicts on a theory of either felony murder or premeditation and deliberation, *Memro II*, 11 Cal. 4th at 861–64, each factfinder "could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444. The California Supreme Court's rejection of Reno's collateral estoppel argument was thus not unreasonable.

Finally, to the extent Reno argues that the California Supreme Court made an unreasonable determination of the facts when it held that the first trial judge might have found Reno guilty of murdering Carl under a felony-murder theory, we reject that argument as well. The California Supreme Court's determination that the trial court did not unequivocally reject the State's argument that Reno violated section 288 was based on a reasonable reading of the record, *see Memro I*, 38 Cal. 3d at 696 n.44, and Reno's own confession constituted sufficient evidence in support of the State's felony-murder charge based on a section 288 violation, *id.* at 699; *see also supra* Part IV.

For these reasons, we affirm the district court's denial of Claims 8, 9, and 10. *See Richter*, 562 U.S. at 102–03.

## C

Claim 62 of Reno's amended § 2254 petition argues that the trial court violated his constitutional rights by instructing the penalty phase jurors that they must unanimously agree regarding the penalty.  The district court found the California Supreme Court's rejection of this argument reasonable and denied the claim.  *Reno*, 2017 WL 4863071, at *53.  We affirm.

A court reviewing a claim of jury instructional error on federal habeas review first considers whether the erroneous instruction amounted to a constitutional error.  *Morris v. Woodford*, 273 F.3d 826, 833 (9th Cir. 2001).    A constitutional error is established where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughton*, 414 U.S. 141, 147 (1973)).  If a federal habeas court finds constitutional error in the jury instructions, the court must then determine whether the erroneous instruction had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *see also Morris*, 273 F.3d at 833.

Under the applicable 1977 California death penalty statute, "if the jury could not agree on the penalty, the court was required to impose a punishment of life imprisonment without possibility of parole."  *Memro II*, 11 Cal. 4th at 882.  In this case, "[t]he jury was instructed that '[i]n order to make a determination as to the penalty, all twelve jurors must agree.'"  *Id.* (second alteration in the original).

Reno argues that the instruction violated his Sixth, Eighth, and Fourteenth Amendment rights because the

instruction "failed to inform the jury that the verdict did not have to be unanimous to impose a life sentence," and thus did not adequately inform the jury of "the effect of an inability to agree on the sentence, thereby increasing the likelihood of prejudice."   Reno also argues that the California Supreme Court unreasonably determined that the instruction was consistent with state law.

Neither contention has merit.  In *Jones v. United States*, the U.S. Supreme Court rejected the petitioner's argument that the jury was required to be instructed that the failure to reach a unanimous decision would result in the imposition of a life sentence.  527 U.S. 373, 382 (1999) ("We have never suggested . . . that the Eighth Amendment requires a jury be instructed as to the consequences of a breakdown in the deliberative process.").  The California Supreme Court's rejection of this same argument was thus not contrary to, or an unreasonable application of, U.S. Supreme Court precedent, especially in the absence of any evidence that the jurors were confused by the instruction.  *Memro II*, 11 Cal. 4th at 882; 28 U.S.C. § 2254(d)(1).

As for Reno's second argument, "that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief."  *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  The California Supreme Court's interpretation of California's 1977 death penalty statute binds us on federal habeas review.  *Richey*, 546 U.S. at 76; *see also Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir. 2007) ("[S]tate courts are presumed to know and correctly apply state law.").  We thus affirm the district court's denial of Claim 62.

## VI

For the reasons set forth above, we affirm the district court's denial of Claims 17, 18, and 48 of Reno's amended § 2254 petition, as to which the district court granted a certificate of appealability. We expand the certificate of appealability to include the arguments raised in Claims 2, 8–10, and 62, and affirm the district court's denial of those claims as well. We deny Reno's request for a certificate of appealability on his remaining claims because he has not shown that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Gonzalez*, 565 U.S. at 140–41; 28 U.S.C. § 2253(c)(2).

**AFFIRMED**.