NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 10 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JEREMY EUGENE CHILDS, | No. 22-35860 |
| Petitioner-Appellant, | D.C. No. 2:17-cv-00360-SI |
| v. | |
| B. AMSBERRY, Superintendent of TRCI, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Submitted April 1, 2024**
Portland, Oregon

Before: OWENS and FRIEDLAND, Circuit Judges, and ORRICK,*** District
Judge.

Jeremy Childs appeals from the district court's dismissal of his 28 U.S.C.

§ 2254 habeas petition as untimely. As the parties are familiar with the facts, we

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable William Horsley Orrick, United States District Judge
for the Northern District of California, sitting by designation.

do not recount them here.  We affirm.

We review the denial of a habeas petition de novo and the underlying factual findings and credibility determinations for clear error.  *Larsen v. Soto*, 742 F.3d 1083, 1091-92 (9th Cir. 2013).  We review the denial of an evidentiary hearing under 28 U.S.C. § 2254 for abuse of discretion.  *Smith v. Baldwin*, 510 F.3d 1127, 1137 (9th Cir. 2007) (en banc).

1.  We do not have jurisdiction over Childs's statutory and equitable tolling arguments.  "[A] certificate of appealability is a prerequisite to our assertion of jurisdiction . . . ." *James v. Giles*, 221 F.3d 1074, 1076 (9th Cir. 2000).  A court can issue one "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The certificate of appealability . . . indicate[s] which specific issue or issues satisfy [the above] showing . . . ."  *Id.* § 2253(c)(3).  Here, the district court issued a certificate of appealability "as to whether [Childs] can excuse the untimely filing" of his petition.  The court only used the word "excuse" when analyzing Childs's actual innocence claim and it is not apparent from the court's analysis that it believed Childs made the requisite showing for a certificate of appealability for his statutory or equitable tolling arguments.  Although we have discretion to expand the certificate of appealability, *see Reno v. Davis*, 46 F.4th 821, 835 (9th Cir. 2022), we decline to do so.  Accordingly, we only have jurisdiction to review Childs's

2

actual innocence claim.

2. Childs did not make the requisite showing for actual innocence required to overcome his untimely habeas petition. A court may consider a procedurally defaulted claim on the merits "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Schlup v. Delo*, 513 U.S. 298, 321 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. "Based on [the] total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 329). "As a general matter, '[r]ecantation testimony is properly viewed with great suspicion.'" *Jones v. Taylor*, 763 F.3d 1242, 1248 (9th Cir. 2014) (quoting *Dobbert v. Wainwright*, 468 U.S. 1231, 1233 (1984) (Brennan, J., dissenting from denial of certiorari)). Where actual innocence is dependent on a recantation, the standard is whether "every juror would credit [the] recantation testimony over [the] trial testimony . . . ." *Id.* at 1250.

Childs did not establish that every juror would find CW's recantation more credible than her trial testimony. The district court noted the suspicious timing of the recantation: five years after Childs's conviction and "during the very short time

3

[CW] lived in TK's home." CW had stated that "TK pressured her" to make the recantation and that her family was pressuring her to get Childs out of prison. The court also noted that "[CW's] statements to DDA Bureta that she could not remember [Childs] touching her [are] not tantamount to a denial that the touching [ever] occurred." These factual findings and credibility determinations are not clearly erroneous. *See United States v. Graf*, 610 F.3d 1148, 1157 (9th Cir. 2010). Childs contends that CW was truthful in her recantation, despite its timing and circumstances, because it was corroborated by evidence that CW's stepfather GG sexually abused her. This is unconvincing, because evidence that GG abused her does not make it less likely that CW was truthful in her trial testimony that Childs abused her.

Moreover, it is not more likely than not that a reasonable juror would have found Childs innocent based on the total record. The judge at Childs's bench trial found CW's trial testimony about Childs's abuse "very believable" and "corroborated in several respects." DDA Bureta, who interviewed CW after CW's recantation, stated that it was unclear "whether [CW was] now recanting because of family pressure, or because it did not happen." CW had referenced a time when Childs was "hurting" her and stated that "he should get in trouble but not that much trouble." Childs argues that CW was not credible in her original accusation and trial testimony because Childs's wife, employer, and employer's wife testified that

4

CW was "a happy, outgoing child who sought out [Childs's] company" and that those descriptions "did not line up with CW's claims of ongoing sexual abuse." However, it is undisputed that Childs took a photograph of CW's genitalia without her consent and showed her the cropped and enlarged photo; a reasonable juror could find that if that incident did not change CW's behavior around Childs, her behavior around him may not have been indicative of his actions toward her.

Childs's remaining arguments about CW's credibility are logically inconsistent and thus unconvincing. Childs contends CW is credible in her recantation, even though it was made several years after Childs's conviction, but that she is not credible in her original allegations of abuse because they were made "several months after [the abuse] allegedly had happened." He also contends that CW is credible in her recantation because GG was "not around" anymore, but that she is not credible in her withdrawal of her recantation—even though GG was still "not around"—because she "may have been too frightened of [GG] to maintain her account."

3. The district court did not abuse its discretion in denying an evidentiary hearing. "[T]he court shall not hold an evidentiary hearing on [a] claim unless . . . the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C.

5

§ 2254(e)(2).  Based on the foregoing, Childs did not meet this standard.

**AFFIRMED.**